**In re Ursula G. SAULTER, Debtor.**

**Bankruptcy No. 91–42541–W–13.**

United States Bankruptcy Court, W.D. Missouri.

Oct. 25, 1991.

Maurice B. Soltz, Kansas City, Mo., for debtor.

Berman, DeLeve, Kuchan & Chapman, Kansas City, Mo., for Kansas City Credit Union.

Rick Fink, Chapter 13 trustee.

## MEMORANDUM OPINION

### FRANK W. KOGER, Chief Judge.

This case comes before the Court on the motion of the Kansas City Credit Union to reconsider confirmation of debtor's Chapter 13 plan.

■ Debtor's Chapter 13 plan was confirmed on September 13, 1991. The Credit Union filed its motion to reconsider on September 19, 1991. The Credit Union claims and this Court finds that notice of the bankruptcy proceeding was not received by the Credit Union in time to allow adequate review of debtor's plan. Therefore, good cause exists under Fed.Bankr.R. 9024 and Fed.R.Civ.P. 60(b)(6) to allow reconsideration of the plan confirmation.

The plan provides for two classes of unsecured creditors. One class is a special class of general, unsecured but nondischargeable student loan creditors which the plan proposes to pay at 100%. The other class consists of the remaining general unsecured creditors to be paid at 10%.

■ The Credit Union bases its objections to the plan on Section 1325 of the Code. It claims that the plan was filed in bad faith in violation of Section 1325(a)(3); and it claims that the plan proposes to pay the Credit Union less than it would receive in a Chapter 7 liquidation bankruptcy in violation of Section 1325(a)(4). The Court rejects these grounds for objection. First, the Credit Union has provided no evidence of bad faith on Debtor's part. Second, the Credit Union is incorrect when it states that it is receiving less under this Chapter 13 plan than under a Chapter 7 liquidation. Debtor reports assets of $3,255.00 and claims exemptions totaling $4,755.00. If debtor's estate were to be liquidated, nothing would remain for unsecured creditors like the Credit Union. However, it is clear that debtor's plan, which proposes to pay 100% to student loan creditors and 10% to all other unsecured creditors, does unfairly discriminate against the class of general unsecured creditors in violation of Section 1322(b)(1).

Section 1322(b)(1) provides that "the plan may designate a class or classes or unsecured claims ... but may not discriminate unfairly against any class so designated." In light of the fact that Congress did not see fit to provide clear guidance as to what unfair discrimination is, the courts have developed a 4 part test of fairness: "(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination." *Mickelson v. Leser (In re Leser)*, 939 F.2d 669, 672 (8th Cir.1991).

■ The basis of the discriminatory treatment in debtor's plan appears to be the fact that the student loan indebtedness is not dischargeable. Debtor seeks to exit bankruptcy free of student loan liability at the expense of other unsecured creditors. In essence, debtor's plan shifts the student loan non-dischargeability burden from herself onto her general unsecured creditors by paying them less during the course of her plan so that she might repay her full student loan indebtedness. This Court does not find such rationale to be a reasonable basis for discriminatory treatment in the Chapter 13 plan. In fact, such treatment runs contrary to the plain meaning of Section 1328(a)(2) and Section 523(a)(8) which is to hold the Chapter 13 debtor fully

responsible for student loan indebtedness absent extraordinary circumstances. Additionally, there is nothing to stop debtor from carrying out a plan without such unfair discrimination. Debtor need only formulate a plan which treats her student loans as long term indebtedness under Section 1322(b)(5). Even though such treatment may require treating student loans differently than other unsecured debt, it cannot be said that it would unfairly discriminate because the treatment would be in full accordance with code provisions. It is also consistent with the "fresh start" philosophy of the Code to insure that debtor emerges from her Chapter 13 plan with no student loan arrearage. Of course, the result will be that remaining debts owed to general unsecured creditors will be discharged at the end of debtor's Chapter 13 plan, whereas student loan indebtedness not paid during the plan will remain. But this must be precisely the result envisioned by Congress when it made student loans generally non-dischargeable in a Chapter 13 plan. 11 U.S.C. Section 1328(a)(2) and Section 523(a)(8).

This Court will not address the factors of whether the plan was filed in bad faith or whether the discrimination in the plan is proportional to the basis of the discrimination. It is sufficient that the Court finds the discriminatory treatment unreasonable and that debtor can carry out a plan without unfairly discriminating.

Other bankruptcy courts addressing the question of whether Section 1322(b)(1) allows discrimination in favor of student loan creditors at the expense of other unsecured creditors have reached the same conclusion. *See, e.g., In re Scheiber*, 129 B.R. 604, 606–07 (Bankr.D.Minn.1991) (public policy reasons allowing discriminatory treatment in cases of child support payments not present in student loan cases); *Matter of Tucker*, 130 B.R. 71, 73–74 (Bankr.S.D.Iowa 1991) (no reasonable basis for discriminatory treatment where debtor proposed to pay 100% to student loans and 13% to other unsecured creditors); *Matter of Cronk*, 131 B.R. 710 (Bankr.S.D.Iowa 1990) (non-dischargeability of student loan

not sufficient reason for discriminatory treatment where plan proposed to pay 40% to student loans and 8% to general unsecured creditors).

■ Prior to the Code amendments in 1990 that made student loans generally non-dischargeable in Chapter 13, some courts addressing the question required debtors to treat their student loan indebtedness as long term debt under Section 1322(b)(5) in order to have their Chapter 13 plans confirmed. *In re McKinney*, 118 B.R. 968 (S.D.Ohio 1990); *In re Newberry* 84 B.R. 681 (Bankr.E.D.Cal.1988); *In re Geehan*, 59 B.R. 600 (Bankr.S.D.Ohio 1986); *but see In re Winthurst*, 97 B.R. 457 (Bankr.C.D.Ill.1989). Such treatment would require the debtor to cure any arrearage in the student loan indebtedness within a reasonable time and maintain regular payments during the pendency of the plan. 11 U.S.C. Section 1322(b)(1). Since the 1990 amendments, the rationale for such treatment is even stronger. Although the most common circumstance where Section 1322(b)(5) comes into play is to cure defaults on residential mortgages, the use of Section 1322(b)(5) is not limited to secured claims or residential mortgages. 5 *Collier on Bankruptcy* Paragraph 1322.09 (Lawrence P. King, ed. 15th ed. 1991). Since student loan liability now typically survives a Chapter 13 bankruptcy, Section 1322(b)(5) is directly applicable where the final payment date of the loan falls after the end of the Chapter 13 plan. Any other treatment that discriminates in favor of student loan creditors at the expense of the other unsecured creditors where the final scheduled student loan payment falls due after the end of the plan is unfairly discriminatory.

In view of the foregoing, the motion of the Kansas City Credit Union to reconsider confirmation of debtor's plan is GRANTED. Confirmation of the plan is withdrawn pending amendment of the plan within 30 days to treat student loan indebtedness as long term debt in accordance with Section 1322(b)(5).

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions

of Law as required under rule 7052, Rules of Bankruptcy.

SO ORDERED.