In re Frank and Kristine
SPERNA, Debtors.

In re Mark and Elisa LUCAS, Debtors.

Ralph M. McDONALD, Chapter
13 Trustee, Appellant,

v.

Frank and Kristine SPERNA, and Mark
and Elisa Lucas, Appellees.

BAP Nos. AZ–93–1971–MeAsR,
AZ–93–1972–MeAsR.
Bankruptcy Nos. B–93–00897–PHX–
RGM, B–93–02173–PHX–RGM.

United States Bankruptcy Appellate Panel,
of the Ninth Circuit.

Argued and Submitted March 23, 1994.

Decided Oct. 25, 1994.

**656**

Virginia Matté, Phoenix, AZ, for appellant.

Edward Doney, Tempe, AZ, for appellees.

Before: MEYERS, ASHLAND and RUSSELL, Bankruptcy Judges.

### OPINION

MEYERS, Bankruptcy Judge:

### I

The Debtors in these two appeals filed Chapter 13 plans which separately classified nondischargeable student loans. In both cases, the plans provided for 100% payment on the student loans, with much smaller percentages on the remaining unsecured claims. The trustee objected to both plans on the ground that the classification, and different treatment, constituted unfair discrimination. The bankruptcy court, relying on the test set forth in *In re Wolff,* 22 B.R. 510 (9th Cir. BAP 1982), overruled the objections and directed that an order confirming the plans be

entered if all the other requirements of the Bankruptcy Code ("Code") were met.

We **REVERSE** and **REMAND**.

## II

## FACTS

Frank and Kristine Sperna ("Spernas") filed for relief under Chapter 13 on January 29, 1993. The Spernas have general unsecured claims of $58,529.64, including $2,107.30 in student loans. The loans are nondischargeable under Section 1328. Pursuant to Section 1322(b)(1) [1] the Spernas separately classified the loans and proposed to pay them 100%. The other unsecured creditors are to receive only 1.4%. The plan is to run 39 months.

Mark and Elisa Lucas ("Lucases") filed for relief under Chapter 13 on March 5, 1993. The Lucases have general unsecured claims of $20,873.10, including $3,166.81 in student loans. These loans also are nondischargeable and separately classified. The Lucases proposed to pay 100% on the loans while paying the other unsecured claims approximately 12.21%.[2]

Ralph McDonald was appointed the Chapter 13 trustee ("Trustee") in both cases. The Trustee filed a recommendation that both plans be denied confirmation on the basis they discriminated unfairly against the class of general unsecured claims. No creditors objected. The court consolidated the plan confirmation hearings for consideration of the single issue of whether the different treatments constituted unfair discrimination. The court took the matter under advisement after the hearing on August 11, 1993. That same day the court issued a lengthy minute entry order overruling the Trustee's objections. This minute entry was docketed on August 16, 1993.

The Trustee filed his notice of appeal in both cases on August 20, 1993. An updated docket shows that an order confirming the Spernas' plan was entered on September 28, 1993, and an order confirming the Lucases' plan was entered on November 24, 1993.

## III

## STANDARD OF REVIEW

The court's interpretation of Section 1322(b)(1) is reviewed *de novo*. *See, e.g., In re Klein*, 57 B.R. 818, 819 (9th Cir. BAP 1985). Its findings of facts are reviewed under a clearly erroneous standard. *In re Porter*, 102 B.R. 773, 775 (9th Cir. BAP 1989).

## IV

## DISCUSSION

A. Leave to Appeal is Granted

 If a minute entry fully adjudicates the issues and clearly evidences the court's intent that the order be the court's final act, the minute entry will be treated as a final order. *See In re Levine*, 162 B.R. 858 (9th Cir. BAP 1994). Here, the court's minute entry clearly contemplated further action by the parties and the court. The court specifically called for the parties to submit a stipulated order confirming the plans "if all the other requirements are satisfied." The minute entry order simply overruled the trustee's objection that the plans unfairly discriminated against the class of unsecured creditors. It did not rule that the plans were confirmed. Therefore, the minute entry was an interlocutory order.

---

1. Section 1322(b)(1) provides that the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but my not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

Section 1122 states:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claims that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

2. The Spernas and Lucases shall be collectively referred to herein as the "Debtors."

Although no motion seeking leave to appeal was apparently filed, the Panel can treat the notice of appeal as a motion for leave to file an interlocutory appeal. Fed. R.Bankr.P. 8003(c). The Panel looks to the standards set forth in 28 U.S.C. § 1292(b) to determine if leave should be granted. *In re Price,* 79 B.R. 888, 889 (9th Cir. BAP 1987), *aff'd,* 871 F.2d 97 (9th Cir.1989). Under that statute, granting leave is appropriate if the order involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation. *Id.*

In this appeal, the controlling issue is whether the student loans can be paid 100% while the other unsecured creditors are paid a lesser percentage. There is substantial ground for a difference of opinion on this issue. Since the 1990 amendments to the Code providing that student loans are non-dischargeable in Chapter 13, there have been numerous opinions published on this issue which express conflicting views. Furthermore, an immediate appeal would advance the ultimate termination of the litigation. Therefore, it is appropriate for the Panel to grant leave.

## B. The Wolff Test

The term "discriminate unfairly" in Section 1322(b)(1) implies that the Chapter 13 debtor may discriminate to some degree in the plan. Furthermore, it is clear that by permitting the separate classification of unsecured claims, Congress anticipated some discrimination, otherwise creating separate classes would serve no purpose. *In re Leser,* 939 F.2d 669, 671–72 (8th Cir.1991); *Barnes v. Whelan,* 689 F.2d 193, 201 (D.C.Cir.1982); *In re Storberg,* 94 B.R. 144, 146 (Minn.1988). However, Congress did not provide a definition of "discriminate unfairly" in the Code. *In re Leser, supra,* 939 F.2d at 672. Courts developed a four-part test to evaluate a plan's discrimination. *See In re Dziedzic,* 9 B.R. 424 (S.Tex.1981); *In re Kovich,* 4 B.R. 403, 407 (W.Mich.1980). The Panel adopted this test in *In re Wolff, supra,* 22 B.R. at 512. Under this test, the court must determine:

(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination. Restating the last element, does the basis for the discrimination demand that this degree of differential treatment be imposed?

*Id. See also In re Leser, supra,* 939 F.2d at 672. The bankruptcy court correctly ruled it was required to apply this test. *See In re Proudfoot,* 144 B.R. 876, 878 (9th Cir. BAP 1992).

Review of the court's application of the test is not entirely possible based on the record before the Panel. No declarations were filed by either the Spernas or Lucases. There is nothing to indicate the actual status of the student loans, what the monthly payments had been, whether there are arrearages or whether the Debtors could have extended the loans outside of the bankruptcy forum. Therefore, remand of this appeal will be necessary. However, we are in a position to analyze the issue of whether the nondischargeable nature of a student loan debt provides a reasonable basis for discriminatory treatment. We must respectfully disagree with the bankruptcy court on that issue, and on that basis must reverse. We examine each of the factors to provide guidance to the court on remand.

### 1. *Nondischargeability is Not a Reasonable Basis for Discrimination*

We agree with those courts that have held that the nondischargeable nature of a student loan debt is not, by itself, a reasonable basis for discrimination. *See In re Chapman,* 146 B.R. 411, 417–18 (N.Ill. 1992) (and cases cited therein). *But see In re Freshley,* 69 B.R. 96, 98 (N.Ga.1987). We believe that in order for discrimination to have a reasonable basis it must advance the purposes behind Chapter 13. The Debtors argue that student loans, as nondischargeable debts, will survive the plan if not paid in full. Consequently, the Debtors will be denied their "fresh start."

■ Certainly, one purpose of Chapter 13 is to enable a debtor to make a fresh start. *In re Alexander,* 670 F.2d 885, 889 (9th Cir.1982). However, there is nothing in the Code or case law that defines "fresh start" as the emergence from bankruptcy completely free of all debt. Debtors often emerge from Chapter 13 with continuing obligations on long-term debt. In fact, it appears the Spernas may emerge from bankruptcy still owing payments on a mortgage and, possibly, auto leases.

■ The "fresh start" afforded debtors under Chapter 13 includes the opportunity to protect assets while curing arrearages, decelerate some obligations, modify others, and completely discharge those obligations not otherwise excluded from discharge by Congress. These tools allow the debtor to achieve a "fresh start," while maintaining a balance with other Congressional policy considerations, *Groves v. LaBarge,* 160 B.R. 121, 123 (E.D.Mo.1993), such as the creation of a stable plan that treats all creditors fairly, based on state law and contractual agreements governing debtors' and creditors' contractual relationships. *See Mann Farms, Inc.,* 917 F.2d 1210, 1213 (9th Cir.1990).

The Debtors' "fresh start" argument also suffers in light of Congress' 1990 amendment to Section 1328, which provided that student loans would not be discharged through a Chapter 13 plan. Previously, a Chapter 13 debtor could discharge student loans like any other general unsecured claim. The amendment can result in student loan indebtedness surviving a plan, while other general unsecured debts still will be discharged. *See In re Saulter,* 133 B.R. 148, 150 (W.Mo.1991). The amendment shows Congress' desire that student loans be repaid. However, Congress had the opportunity to grant student loans priority status in Sections 507 and 1322(a)(2), and it could have specifically mentioned them in Section 1322(b)(1) as it did with co-signed consumer debts. But it did neither of these things. *See In re Smalberger,* 157 B.R. 472, 475 (Or.1993), *aff'd* and *adopted,* 170 B.R. 707 (D.Or.1994). There is nothing to indicate

that student loans, simply because they are nondischargeable, should effectively be given priority over all other unsecured claims.

■ The Debtors argue that other characteristics of student loans, such as special provisions for their collection, justify the disparate treatment they propose. Even assuming that such factors might be relevant, the Debtors did not present any evidence, regarding arrears or defaults for example, demonstrating that any of these factors really could affect these plans. In any case, these factors do not justify effecting a subordination of all the other unsecured claims. *See In re Chapman, supra,* 146 B.R. at 418. *See also McCullough v. Brown,* 162 B.R. 506, 517–18 (N.D.Ill.1993).

### 2. *Carrying Out a Plan Without Discrimination*

■ The court ruled the parties did not dispute that the Debtors could not perform the plan unless the discriminatory treatment remained. The Trustee contests this ruling. In particular, the Trustee points out that his recommendation was that the Debtors amend their plans. He did not move for dismissal or conversion as would be appropriate if he believed the Debtors could not propose a plan without discrimination.

The record does not reflect any agreement by the Trustee that discrimination was necessary. Furthermore, the record is insufficient to support a finding that the Debtors could not carry out an adequate plan without discrimination. In particular, there is nothing indicating what payments were due under the loan agreements, when the last payment was due under the loan agreements in relation to the plan, whether there were any arrearages, whether the loans have been accelerated and whether the plans would effect an acceleration. *See In re Christophe,* 151 B.R. 475, 477 (N.Ill.1993). This is important because Section 1322(b)(5) provides for the cure of any default on a loan and the maintaining of payments if the last payment is due after the date on which the final payment under the plan is due.[3] This is one of

---

**3.** Section 1322(b)(5) states that the plan may—

notwithstanding paragraph (2) of this subsection [granting debtors some ability to modify

the mechanisms which the Debtors may be able to utilize to obtain their fresh start.

### 3. *Good Faith in Proposing the Plan*

The third factor is whether the classification and disparate treatment was proposed in good faith. The court ruled that good faith was demonstrated by the fact the Debtors intended to provide 100% to the student loans, and also intended to pay as much as the Debtors could afford to the other creditors.

Courts have spent a great deal of effort trying to define good faith under Section 1325(a)(3). *See In re Warren*, 89 B.R. 87 (9th Cir. BAP 1988). The *Warren* Panel set forth many factors to consider. 89 B.R. at 93. While many of those factors focus on the events leading to the filing or the financial information provided by the debtor, the Panel did include factors solely concerning the plan. In particular, the Panel directed courts to examine the "extent of preferential treatment between classes of creditors." *Id.* Whether a debtor discriminates among creditors is a factor in determining good faith.

We take guidance from the *Warren* decision, and agree with it that the good faith test should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13. 89 B.R. at 93. We believe an appropriate view of good faith under the *Wolff* test is whether the discrimination involved furthers the goals of the debtor, satisfies the purposes behind Chapter 13 and does not require any creditor or group of creditors to bear an unreasonable burden. For example, if the plans were being used to effectively accelerate payments

on the loans at the expense of the unsecured creditors, such discrimination would be in bad faith. *In re Christophe, supra,* 151 B.R. at 480.[4] Again, the bankruptcy court record does not allow for a proper review.

### 4. *Whether the Degree of Discrimination is Related to the Basis for Discrimination*

This factor, as restated by the *Wolff* court, is whether the basis for the discrimination, here the desire to fully pay the student loans, demands the degree of differential treatment proposed. At least one court has noted that this factor appears to be the same as whether the discrimination is necessary. *In re Christophe, supra,* 151 B.R. at 479. We believe the factors are closely related, but distinct. The second factor asks whether any discrimination at all is necessary. If the answer is affirmative, the court must then determine if the amount, or degree, of discrimination proposed is directly related to the reason for the discrimination.

The court found that the extent of the discrimination was necessary to effectuate the plan. Again, an examination of the terms of the loans would be helpful here. As with the other factors, we must remand for further findings by the court.

## V

### CONCLUSION

We hold that the nature of student loans as nondischargeable is not, by itself, a reasonable basis for giving them preferential treatment. Instead, the Debtor must show some other factors which demonstrate that discrimination is necessary. The record below does not provided a sufficient basis for

---

the rights of unsecured creditors], provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

4. Given that student loans are generally long-term obligations, the unfairness of plans which could accelerate these loans even though they may not even be in default at the time that the Chapter 13 is filed, to the detriment of other

unsecured obligations, is manifest. The unfairness would be even more evident if some or all of the other unsecured claims were the product of fraud, false representations or willful and malicious injury to the person or property, which would not ordinarily be dischargeable in a Chapter 7, but likely would be discharged by a plan under the broader discharge provided in Chapter 13. *See Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 563, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990) ("broader discharge"); *In re Webre*, 88 B.R. 242, 246 (9th Cir. BAP 1988).

making such a determination. Furthermore, the record is inadequate for analysis of the remaining factors of the four-part test.

Therefore, we **REVERSE** and **REMAND**.