**In re Paula Voyer REGINE and Thomas J. Regine, Debtors.**

**Bankruptcy No. 98–13785.**

United States Bankruptcy Court,
D. Rhode Island.

April 1, 1999.

Edward J. Gomes, Providence, RI, for debtors.

John Boyajian, Boyajian, Harrington & Richardson, Providence, RI, Chapter 13 Trustee.

---

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the Trustee's Objection to confirmation of the Debtors' Chapter 13 plan which provides $236 per month for thirty-six months, yielding unsecured creditors approximately 17% of their claims. The Debtors also wish to separately classify a $19,000 unsecured debt to Citizens Bank, and to pay that debt in full. The Debtor's mother is a co-signor on the Citizens loan, and Citizens holds a mortgage on her home. The issues are: (1) Does the prohi-bition against unfair discrimination contained in 11 U.S.C. § 1322(b)(1) apply to the Citizens debt? and (2) if so, does the plan, as classified, unfairly discriminate against other creditors? Based on the facts in the case, we answer both questions in the affirmative.

### DISCUSSION

■ We are dealing here with Section 1322(b)(1) of the Code, which provides that:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

11 U.S.C. § 1322(b)(1). The Debtors contend that under this section, co-obligors of consumer debts may be treated differently from other unsecured debt, and are specifically carved out of the unfair discrimination test. In support, the Debtors cite *In re Riggel*, 142 B.R. 199, 204 (Bankr. S.D.Ohio 1992); *In re Dornon*, 103 B.R. 61, 64 (Bankr.N.D.N.Y.1989). Not surprisingly, there is a split of authority on this issue and, also not surprisingly, we believe that the better view is to apply the unfair discrimination standard equally to all consumer debts, whether or not they are co-signed. *See In re Applegarth*, 221 B.R. 914, 915–16 (Bankr.M.D.Fla.1998), where the court said:

The legislative history of the 1984 amendment to Section 1322(b)(1) supports the view that a debtor's separate classification of a codebtor claim cannot unfairly discriminate. Before Section 1322(b)(1) was amended in 1984, a debtor could classify unsecured claims together only if the claims were sub-

stantially similar and then only if the classification did not unfairly discriminate against other unsecured creditors. *In re Strausser,* 206 B.R. [58] at 59 [ (Bankr.W.D.N.Y.1997) ]. The legislative history of the 1984 amendment of Section 1322(b)(1) only discusses the policy reasons for allowing a separate classification of a codebtor claim. S.Rep. No. 65, 98th Cong., 1st Sess., pp. 17–18. The legislative history does not mention the unfair discrimination standard. *Id.* If Congress wanted to waive the unfair discrimination requirement, Congress could have expressly done so. *In re Strausser,* 206 B.R. at 59; *In re Battista,* 180 B.R. at 357. Thus, the proper interpretation of Section 1322(b)(1) is that a codebtor claim may be separately classified but only if the classification does not unfairly discriminate.

*In re Applegarth,* 221 B.R. at 915–16; *see also In re Janssen,* 220 B.R. 639, 643 (Bankr.N.D.Iowa 1998); *In re McKown,* 227 B.R. 487, 492 (Bankr.N.D.Ohio 1998); *In re Battista,* 180 B.R. 355, 357 (Bankr. D.N.H.1995). With that said, we then must determine whether the proposed classification unfairly discriminates against other classes of unsecured creditors.

■ In determining whether such classifications discriminate unfairly, courts have considered the following factors:

(1) whether the discrimination has a reasonable basis;

(2) whether the debtor can complete a plan without the discrimination;

(3) whether the discrimination is proposed in good faith; and

(4) whether the degree of discrimination is directly related to the rationale for the discrimination.

*In Re Whitelock,* 122 B.R. 582, 588 (Bankr. D.Utah 1990); *In re Bowles,* 48 B.R. 502 (Bankr.E.D.Va.1985). These four factors, however, are not exclusive of all other considerations.

No single test or formula provides a satisfactory structure for all contexts. The question, as Judge Ginsberg recognized in *In re Chapman,* boils down to whether the plan reflects a reasonable balance in "the relative benefits allocated to the debtor and creditors from the proposed discrimination." 146 B.R. [411] at 419. Finally, any analysis of the relative benefits (and detriments) resulting from the proposed discrimination must be undertaken in light of the impact of the discrimination on Congress' chosen statutory definition of the legitimate interests and expectations of parties-in-interest to Chapter 13 proceedings.

*In re Colfer,* 159 B.R. 602, 607–08 (Bankr. D.Me.1993) (footnotes omitted). We believe that the determination should be made based on the totality of circumstances, including balancing the relative benefits to the debtor and creditors from the proposed discrimination.[1]

■ It is the Debtors' burden to demonstrate by a preponderance of the evidence that the proposed classification and treatment of creditors does not discriminate unfairly. *Id.* at 608. The Debtors state in an affidavit that the co-signed obligation was used to pay off other significant unsecured debt,[2] including the buy out of a car lease, and argue that without the co-signed loan, the unsecured debt

---

1. "[M]odification of a debtor's plan is likely to be a zero sum game in which gains that go to one creditor because of classification or for other reasons, come out of the pockets of other creditors.... That being the case, Congress must have intended that a certain level of discrimination is to be expected and is acceptable." *In re Colfer,* 159 B.R. at 606, n. 15 (citation omitted).

2. While they have not discussed the amount of unsecured debt that was paid down from the loan proceeds, it appears from information available in the record that approximately $7,021 of the original $25,000 loan went to unsecured creditors.

would be higher and they would not have an automobile to get to work to fund a plan.

The Chapter 13 Trustee argues that the disparity in the treatment of other unsecured creditors and the co-signed creditor—17% versus 100%—is de facto unfair discrimination. He also points out that the Debtors have two car payments totaling $437 per month which will expire during the life of the plan, with no mention as to what they intend to do with the resulting extra income. Finally, the Trustee notes that if the Debtors voluntarily proposed a five year plan, that would increase the dividend to 57%.

Based upon the entire record, we find that the Debtors have not met their burden of demonstrating that the proposed classification of creditors does not unfairly discriminate. *See In re Applegarth,* 221 B.R. at 916 (finding that a five year plan paying general creditors 10%, while the codebtor creditor receives 100%, unfairly discriminates against unsecured creditors).

Finally, as guidance, if the Debtors were to propose a five year plan and account for the disposable income that will become available upon the termination of their present car payments, they would be in a much better position vis-a-vis the issue of unfair discrimination. With that said, confirmation of the existing plan is DENIED and the Debtors have eleven (11) days, pursuant to R.I. LBR 3015–3(c), to file an amended plan.

Enter Judgment consistent with this opinion.