**In re Cheryl THIBODEAU, Debtor.**

**No. 99–18517–JNF.**

United States Bankruptcy Court,
D. Massachusetts.

May 19, 2000.

Richard Gottlieb, Law Offices of Richard Gottlieb, New York City, for Debtor.

Doreen Solomon, Office of the Chapter 13 Trustee, Milton, MA, for Chapter 13 Trustee.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the Chapter 13 Trustee's Objection to Confirmation of the Chapter 13 Plan (the "Plan") filed by the Debtor, Cheryl Thibodeau (the "Debtor"). The Debtor's Plan is for a 36 month term. The Trustee objects to the separate classification of the Debtor's prepetition arrearage on unsecured and nondischargeable student loan debt. Under the Plan, the Debtor proposes to pay 100% of an arrearage on a nondischargeable student loan, while paying general unsecured claims a 27% dividend. The Court held a hearing on the Objection and the Debtor's response on February 7, 2000 and took the matter under advisement.

The issue presented is whether 11 U.S.C. § 1322(b)(5), which permits the curing of any default and the maintenance of payments while the case is pending on claims on which the last payment is due after the final payment under the plan is due, supercedes § 1322(b)(1), which bans unfair discrimination among classes of unsecured creditors. The Court now makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052. For the reasons set forth below, the Court sustains the Chapter 13 Trustee's Objection and denies confirmation of the Debtor's Chapter 13 Plan.

## II. FACTS

The material facts necessary to decide the issue are not in dispute. The Debtor filed a petition for Chapter 13 relief on October 21, 1999 and concurrently filed her schedules and Chapter 13 Plan. On Schedule D–Creditors Holding Secured Claims, the Debtor listed two creditors: 1) Fleet Mortgage with a claim in the sum of $230,000; and 2) Toyota Motor Credit Corporation with a claim in the sum of $17,-000. The Debtor intends to pay all secured claims outside the Plan. On Schedule ECreditors Holding Unsecured Priority Claims, the Debtor listed two creditors: 1) the Internal Revenue Service with a claim in the sum of $6,316; and 2) the Massachusetts Department of Revenue with a claim in the sum of $1,188. The Debtor intends to pay these claims in full through her Plan.

On Schedule F–Creditors Holding Unsecured Nonpriority Claims, the Debtor listed four creditors with claims totaling $183,158.95. The Debtor listed Sallie Mae Servicing [sic] ("Sallie Mae") with two claims: 1) "Student Loans (HEAL loan program)" in the sum of $61,064.37; and 2)

"Consolidated Loans (SMART loan program)" in the sum of $109,900.90.

On Schedule I–Current Income of Individual Debtor, the Debtor listed total monthly income of $5,780.19. On Schedule J–Current Expenditures of Individual Debtor(s), she listed total monthly expenses of $4,333.97. The Debtor's excess income thus totals $1,446.22.

The Debtor intends to pay $1,374.00 per month into her Plan. In the Plan, she indicates that there is an arrearage of $4,049 on the HEAL loan,[1] which is non-dischargeable pursuant to 11 U.S.C. §§ 1328(a)(2) and 523(a)(8). The Consolidated Loans (SMART loan program) and other miscellaneous credit card debt, totaling $122,094.58, which make up the balance of the "General Non–Priority Unsecured Claims," are treated as dischargeable debts.[2]

In Section IV of the Plan—Claims of Unsecured Creditors, the Debtor provides for "Treatment of Dischargeable Claims" and "Treatment of Separately Classified Non–Dischargeable Claims under 11 U.S.C. § 1328(a)."[3] In the section "Treatment of Dischargeable Claims," she lists claims that total $122,095 and proposes to pay them a dividend of 27%. This treatment results in total payments of approximately $32,966.

In the section providing for "Treatment of Separately Classified Non–Dischargeable Claims," the Debtor lists the HEAL loan arrearage of $4,049. She proposes to pay the claim in full at the rate of $112.47 per month and to continue making the regular postpetition payments on the loan outside of the Plan. On Schedule J, the Debtor discloses that the monthly payment on the HEAL loan is $585.00.

## III. POSITIONS OF THE PARTIES

### A. The Chapter 13 Trustee

The Chapter 13 Trustee objects to confirmation of the Plan on the basis that the separate classification of the unsecured student loan arrearage, which results in the student loan creditor receiving a higher dividend than other general unsecured creditors, constitutes unfair discrimination and violates 11 U.S.C. §§ 1322(a)(3) and (b)(1). Although the Trustee does not object to the Debtor maintaining her monthly student loan obligations outside the Plan, however, she contends that the Debtor's proposal to cure the arrearage in accordance with § 1322(b)(5) is unfair and discriminatory to the Debtor's remaining general unsecured creditors. The Trustee argues that the Debtor should be required to propose a plan that pays the arrearage portion of Sallie Mae's HEAL claim the same dividend as her remaining general unsecured creditors, which would require

---

1. "HEAL" stands for: Health Education Assistance Loans. The Debtor incurred the debt in 1996. It has a term of 20 years.

2. In her Plan, the Debtor does not indicate the basis for treating the "SMART" loan as a dischargeable debt. Moreover, neither party addresses the propriety of such treatment in their Briefs. The Court notes that student loan debts for cases commenced after October 7, 1998, such as this case, are nondischargeable unless the debtor can demonstrate that repayment of the debt will impose an undue hardship. *See* 11 U.S.C. §§ 523(a)(8), 1328(a)(2). Because the Court denies confirmation of the Debtor's Plan on other grounds, resolution of this issue is not necessary. However, in any future proceedings on confirmation, the Court shall require the Debtor to provide support for her treatment of the

"SMART" loan as a dischargeable obligation, and will afford interested parties an opportunity to be heard on such treatment.

3. Section § 1328, "Discharge," provides in pertinent part:

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
 (1) provided for under section 1322(b)(5);
 . . . .
11 U.S.C. § 1328.

the Debtor to pay the balance of the arrearage, or approximately $3,000, upon completion of the plan. The Trustee further argues that the Debtor's current income and expenses are such that it would be possible for her to do so.

The Trustee also asserts that by paying the HEAL loan creditor's arrearage in full, the Debtor "seeks to in effect add a priority class." The Trustee maintains that if Congress had intended that debtors be able to prefer holders of student loan obligations over other creditors it would have expressly provided for such treatment.

### B. The Debtor

In response to the Trustee's Objection, the Debtor asserts that the separate classification of the HEAL loan arrearage does not constitute "unfair discrimination" within the meaning of 11 U.S.C. § 1322(b)(1) because the separate classification and proposed treatment of the HEAL loan is permitted by 11 U.S.C. § 1322(b)(5). She maintains that because the Bankruptcy Code specifically provides for the curing of unsecured obligations that mature beyond the life of the plan, Congress intended to give debtors the flexibility to separately classify long term debt without violating the ban on unfair discrimination.

The Debtor further contends that the Trustee's argument for pro rata treatment of the HEAL loan arrearage is contrary to the concept of curing a default within the context of 11 U.S.C. § 1322(b)(3) and (b)(5). She argues that pursuant to § 1322(b)(5) providing anything less than payment in full of the arrears would render the "curing," as used in the statute, meaningless and would be contrary to the principle set forth in U.S. v. Ven–Fuel, Inc., 758 F.2d 741, 751–52 (1st Cir.1985), in which the court emphasized the principle of statutory construction that "all words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous."

### IV. DISCUSSION

#### A. Applicable Law

■ As the Trustee has raised the issue of whether the Debtor's plan unfairly discriminates, the Debtor has the burden of persuading this Court that the classification and treatment of the HEAL loan arrearage does not discriminate unfairly and that her plan meets the requirements of § 1325 and is confirmable. In re Regine, 234 B.R. 4, 6 (Bankr.D.R.I.1999); In re Colfer, 159 B.R. 602, 608 (Bankr.D.Maine 1993).

■ Section 1322 sets forth mandatory and discretionary provisions for Chapter 13 plans.[4] It is well recognized that the

---

4. Section 1322, Contents of Plan, provides in pertinent part:

 (a) The plan shall-
 (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the future execution of the plan.
 (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to different treatment of such claim; and
 (3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

 (b) Subject to subsections (a) and (c) of this section, this plan may-
 (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims,
 (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; . . .

nondischargeability of student loan debt is not a sufficient ground to permit separate classification and more favorable treatment of such debt. *In re Sullivan*, 195 B.R. 649, 654 (Bankr.W.D.Tex.1996); *In re Colfer*, 159 B.R. at 603.[5] *See also In re Chandler*, 210 B.R. 898, 901 (Bankr.D.N.H. 1997); *In re Saulter*, 133 B.R. 148, 149 (Bankr.W.D.Mo.1991).

In *Saulter*, however, the court, while finding that separate classification based upon nondischargeability constituted unfair discrimination, suggested that treatment of the loan as a long term debt under § 1322(b)(5) would be acceptable. The court determined that "permitting debtors to maintain their payments to [unsecured creditors] at the full contract rate, as expressly permitted by § 1322(b)(5) is not 'unfair' discrimination" and pursuant to that section "debtors may cure any defaults that exist and may maintain contractual payments as required for long-term unsecured debt" during the term of the plan. 133 B.R. at 150. The court observed the following:

> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ...

11 U.S.C. § 1322.

**5.** In *Sullivan*, Chapter 13 debtors proposed a plan where the student loan creditors were placed in a separate class with a full dividend, while the unsecured creditors received only a 3% dividend. The court denied confirmation of the plan, citing that the debtor's interest in a "fresh start" did not justify the disparate treatment in favor of non-dischargeable debt. *Sullivan*, 195 B.R. at 654. The court stated:

> The debtor is not expected to obtain an unfettered "fresh start" vis-a-vis nondischargeable obligations. No one would seriously argue that a debtor's interest in a fresh start would justify discrimination in favor of a debt incurred through fraud just because the debt happens also to be nondischargeable under § 523(a)(2). Yet that is the essence of the argument ... that the

Debtor need only formulate a plan which treats her student loans as long term indebtedness under section 1322(b)(5). Even though such treatment may require treating student loans differently than other unsecured debt, it cannot be said that it would unfairly discriminate because the treatment would be in full accordance with code provisions. It is also consistent with the "fresh start" philosophy of the Code to insure that debtor emerges from her Chapter 13 plan with no student loan arrearage. *Id.*

In contrast to the court in *Saulter*, other courts attempt to analyze subsections 1322(b)(1) and (b)(5) together to give full meaning to the statute. The court in *Chandler* observed that § 1322(b)(1) must be applied consistently with § 1322(b)(5), reasoning that:

> [if] Congress had wanted courts not to consider whether putting unsecured creditors in a separate class and providing for full monthly payments on the unsecured creditors' claims during the course of the plan constituted unfair dis-
>
> nondischargeable nature of the debt fetters the debtor's fresh start, justifying disparate treatment in favor of nondischargeable debt.

*Id.*

The court in *Colfer* recognized that it is unfair to creditors holding dischargeable claims that a creditor holding nondischargeable claims, who may pursue its claims outside of bankruptcy, will be preferred not only after the bankruptcy plan is completed, but also during the time payments are to be made to creditors. 159 B.R. at 609. The court reasoned:

> To put it colloquially, receipt of payments under the chapter 13 plan is the only shot at collecting from the debtor for those creditors holding dischargeable claims while student loan creditors may have more than one shot at collection. This fact would seem to argue against allowing a debtor to separately classify nondischargeable student loan debts for preferential treatment.

*Id.* (quoting *In re Smalberger*, 157 B.R. 472, 475–76 (Bankr.D.Or.1993)). *Cf. In re Mammoth Mart, Inc.*, 536 F.2d 950, 953 (1st Cir. 1976) (giving priority to a claimant not clearly entitled thereto is inconsistent with the policy of equality of distribution).

crimination, Congress would have drafted section 1322(b)(5) to read "notwithstanding paragraphs (1) and (2) of this subsection, [a plan may] provide for the curing of any default ... and maintenance of payments...." Congress did not draft the statute in such a manner. 210 B.R. at 903.

The court in *Coonce,* similarly declined to confirm the Chapter 13 debtors' plan where the student loans were separately classified on the basis of § 1322(b)(5), holding that the "fairness" determination is applicable to long term debt under the section, and the debtors' classification was unfairly discriminatory. *In re Coonce,* 213 B.R. 344 (Bankr.S.D.Ill.1997). Citing *Chandler,* the *Coonce* court found that reading § 1322(b)(5) to mean that every classification under the section is "fair discrimination," as the Debtor in this case asserts, is not correct. *Id.* at 347. The court stated "this reading of § 1322(b)(5) presumes too much and is inconsistent with the statute's language and intended purpose." *Id.* Stating a "mixed motive" existed for classifying student loan debts as long term obligations, with the real reason being the reduction of the nondischargeable debt burden following bankruptcy, the Court refused to permit "such an end run around § 1322(b)(1) and specifically [found] that § 1322(b)(1) prohibits unfair discrimination even when it appears in the guise of treatment of long term debt under § 1322(b)(5)." *Id.* at 348

■ This Court agrees with the courts in *Chandler, Sullivan* and *Coonce.* Subsections 1322(b)(1) and (b)(5) should both be given effect. Thus, the Court must determine whether the proposed discrimination in favor of the HEAL creditor is fair. The Eighth Circuit test for fairness of discrimination in separately classified claims set forth in *In re Leser,* 939 F.2d 669 (8th Cir.1991) is frequently cited. The four part *Leser* test is:

1) whether the discrimination has a reasonable basis; 2) whether the debtor can carry out a plan without the discrimina-

tion; 3) whether the discrimination is proposed in good faith; and 4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

939 F.2d at 672. The Court in *Colfer,* however, pointed out that the *Leser* test is "not universally employed," that "no single test or formula provides a satisfactory structure for all contexts," and "tests that set out distinct categories for consideration have facial appeal." 159 B.R. at 607. The First Circuit recognized that although formulaic tests offer convenience and ease in application, "neither life nor law can always be made convenient and easy." *United States v. Santana,* 6 F.3d 1, 6 (1st Cir.1993).

Other courts employ inquiries such as "whether plan classification reflects the legitimate interests of the debtor," *In re Boggan,* 125 B.R. 533, 534 (Bankr.N.D.Ill. 1991); "whether discrimination is necessary to the plan's fulfillment," *James v. Moore (In re James),* 150 B.R. 479, 485 (Bankr.M.D.Ga.1993); and, whether the discrimination "rationally furthers an articulated, legitimate interest of the debtor." *In re Sullivan,* 195 B.R. 649 (Bankr. W.D.Tex. 1996) (quoting *In re Willis,* 189 B.R. 203, 205 (Bankr.N.D.Okla.1995)).

### B. Analysis

■ The Court shall follow the *Leser* test for determining the fairness of discriminatory treatment as it considers all relevant factors, including the debtor's interests which are subsumed in factors one and two. Applying it to the facts of this case, the Court concludes that the Debtor has failed to meet her burden that her plan does not unfairly discriminate. The Debtor's proposed discrimination satisfies only the first prong of the *Leser* test, as the debtor has a legitimate interest in emerging from the Plan without a substantial unsecured debt burden.

The third prong of the test, whether the classification and disparate treatment is proposed in good faith, cannot be answered in the affirmative. The Debtor has a substantial income, yet she failed to apply the full amount of her excess income towards Plan payments. The Debtor does not apply $72.22 of her monthly income to plan payments. Over 36 months, she is withholding $2,599.92 of her disposable income or more than half the arrearage of the HEAL loan. Thus, the Debtor's Plan does meet the requirements of 11 U.S.C. § 1325(b)(1) because she does not propose to either pay allowed unsecured claims 100% or pay all of her projected net disposable income to the first three year period of the Plan towards her Plan obligations.

 Moreover, a Plan that proposes to discriminate against a class of creditors is not filed in good faith where the Debtor does not apply the entire amount of her excess income towards paying her creditors. Although neither the Chapter 13 Trustee, nor other creditors have objected to the Debtor's projected monthly payment amount, the Court is "under an independent duty to verify that Chapter 13 plan does in fact comply with the law irrespective of lack of objection by creditors or the Chapter 13 trustee." *In re Bowles*, 48 B.R. 502, 505 (Bankr.E.D.Va. 1985). Because the Debtor has an additional $72.22 in excess income per month that is not applied to Plan payments, the Court finds that the Debtor can increase the dividend to the class entitled "Treatment of Separately Classified Non–Dischargeable Claims" by $2,599.92 thus increasing the dividend to 29.1%. The Court cannot find that the Debtor's discrimina-

tion has been proposed in good faith where a substantial sum of money is left unaccounted for.

 Under the third prong of *Leser*, the intentions of the Debtor and the legal effect of confirmation of a Chapter 13 plan should be examined "in light of the spirit and purposes of Chapter 13." *In re Sperna*, 173 B.R. 654, 659 (9th Cir. BAP 1994). Good faith will not be found where discrepancies exist between proofs of claim and their treatment in the Plan. The proof of claim filed with respect to the "Consolidated Loans (SMART loan program)" varies in the amount submitted by the creditor with its treatment in the Plan by $1,179.18.[6] The proof of claim was timely filed, and the Debtor did not object to it. Thus, it is deemed allowed by operation of law, and the Debtor must provide for the claimed amount. *See* 11 U.S.C. § 502; Fed. R. Bankr.P. 3001(f).[7] The Debtor must provide for the amount listed in the proof of claim.

The second and fourth prongs of the *Leser* test, whether the Debtor can carry out a plan without the discrimination and whether the degree of discrimination is directly related to the basis or rationale for the discrimination can be analyzed together. The Court finds that other options exist for the Debtor to propose a less discriminatory plan.

The prohibition imposed by many courts of separately classifying student loan claims based solely on nondischargeability is not directly at issue here. The Debtor has asserted that her basis for separate classification of the student loan arrearage is not due solely to the fact that it is nondischargeable.[8] Her argument for sep-

---

**6.** The proof of claim with respect to the SMART loan, filed by Sallie Mae Servicing Corp. on November 19, 1999, listed a claim in the sum of $111,080.08. The Debtor listed the SMART loan on her schedules and provided for the claim in the Plan in the sum of $109,900.90. A discrepancy of $1,179.18 exists.

**7.** Section 502, "Allowance of claims or interests," provides in pertinent part:
(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest, ..., objects.
11 U.S.C. § 502.

**8.** Indeed, the Debtor's Memorandum of Law in Support of Response of Debtor to the Ob-

arate classification is predicated upon treatment of the claim as long term indebtedness under § 1322(b)(5). Nevertheless, it is obviously in the Debtor's interest to reduce the amount of nondischargeable debt remaining after the completion of her Chapter 13 Plan. Thus, this Court agrees with the Court in *Coonce* that where a mixed motive exists for the separate classification, discriminatory treatment will not be permitted under the guise of § 1322(b)(5).

■ The prohibition against unfair treatment in § 1322(b)(1), does not require identical treatment as the Trustee argues. The Debtor's proposed treatment of the HEAL obligation, however, results in the HEAL loan creditor being paid substantially more than the general class of unsecured creditors. While maintaining payments of $585 per month, the Debtor is also making payments of $112.47 per month toward the arrearage, for a total monthly payment of $696.47 on a debt of $61,064.31. In contrast, she is paying approximately $1,100 per month on claims totaling in excess of $180,000. Thus, the HEAL creditor is being paid 2/3 of what other unsecured creditors are being paid, on a debt which is approximately 1/3 of her total unsecured debt. What the Debtor is proposing violates the principles articulated by the court in *Colfer*, 159 B.R. at 609.

If the Debtor's Plan is confirmed as filed, the unsecured creditors, designated in the section "Treatment of Separately Classified Non–Dischargeable Claims" would receive a dividend of 27%, after allowance of a ten percent trustee commission. If the Debtor did not separately classify the HEAL loan arrearage, however, and treated all the unsecured creditors equally, making payments of $1,374 monthly, all unsecured creditors, including the HEAL creditor, would receive a dividend of 29.3%. The total amount that the unsecured creditors would receive (as one general class) would increase by $2,808. The Debtor would emerge from her Plan still owing $2,862 on the HEAL loan arrearage. This amount could be easily provided for given the Debtor's monthly disposable income. In addition, other options exist for the Debtor to propose a confirmable plan that is far less discriminatory to the other unsecured creditors

■ The Debtor's sizeable income allows her flexibility, which is not available to many low income debtors, to propose a non-discriminatory plan. In order to effectuate a nondiscriminatory plan, the Debtor could pay the student loan creditor pro rata with other unsecured creditors during the life of the plan and as a continuing obligation after completion of the Plan. *Coonce*, 213 B.R. at 348. The Debtor also could extend the duration of her Plan in order to provide the other general unsecured creditors with a greater distribution. *Id.*[9]

---

jection of the Chapter 13 Trustee to Confirmation of the Debtor's Chapter 13 Plan states: "the Debtor strongly asserts the **legal basis** for the separate classification and disparate treatment of these loans under her Chapter 13 Plan **does *not* arise from the fact that these debts are non-dischargeable.**" (emphasis in original).

9. The Debtor has proposed a 36 month Plan. This is the minimum plan duration which can be approved over objection. 11 U.S.C. § 1325(b)(1)(B). The Debtor could, if she chose, extend the term of the Plan up to five years with court approval, thereby allowing greater distribution to the other general unsecured creditors. 11 U.S.C. § 1322(d). While

the Court cannot force the Debtor to extend her Plan beyond the 36 month minimum, the Court must balance the interests of the Debtor against those of unsecured creditors in determining whether the classification is fair. *In re Ponce*, 218 B.R. 571, 578 (Bankr.E.D.Wash. 1998).

Under a 60 month Plan, devoting all of her disposable income, the Debtor could pay all general unsecured creditors approximately $86,760, or approximately 71% of their claims. The Debtor would emerge from her Plan with a HEAL loan arrearage of approximately $1174. The arrearage could easily be paid off within two months upon completion of the Plan.

Alternatively, the Debtor could propose a plan which provides that for the first 36 months all payments would be devoted to all unsecured claims, and that for the remaining 24 months payments would be devoted solely to the student loans. *See In re Strickland,* 181 B.R. 598, 599 (Bankr. N.D.Ala.1995) (the remaining 24 months of a plan (after the initial 36) may be devoted solely to payment of student loan). "A general unsecured creditor has a right to expect no more than three years of the debtor's disposal income." *Id.*

The Court does not have all the figures needed to predict the effect a Plan extension would have in this case. No documents have been provided to the Court substantiating the term of the HEAL loan and the rate of interest. Therefore, the Court cannot say with certainty what would be a feasible plan that satisfies subsections 1322(b)(1) and (b)(5). However, as discussed, it is clear that the Debtor has options from which to propose a confirmable Chapter 13 Plan. In addition, nonbankruptcy alternatives exist.[10]

In summary, flaws exist in the plan as proposed, and the Court will not confirm the Plan as filed for the following reasons: 1) the proposed discrimination is unfair to the class of general unsecured creditors; 2) the Debtor has not applied the entire amount of her excess income to the Plan payments as required by § 1325(b)(1)(B);[11] 3) her failure to submit all of her net disposable income indicates a lack of good faith in proposing her Plan; 4) a sizeable discrepancy exists between

the amount proof of claim of Sallie Mae Servicing Corp. and its treatment in the Plan; and 5) other options exist to allow the Debtor to carry out a Chapter 13 plan without the significant discrimination she has proposed.

## V. CONCLUSION

In view of the foregoing, the Court sustains the Objection of the Chapter 13 Trustee to Confirmation of the Debtor's Chapter 13 Plan and denies confirmation of the Chapter 13 Plan.

---

**10.** In denying confirmation of a Chapter 13 plan, the court in *Coonce* suggested alternative deferral mechanisms which "allow borrowers to defer payment on the loans for up to 36 months for such reasons as unemployment, financial hardship, and disability." 213 B.R. at 349.

**11.** Section 1325, "Confirmation of plan," provides in pertinent part:
(a) Except as provided in subsection (b), the court shall confirm a plan if-
(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title; ...

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan...
(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan....
11 U.S.C. § 1325.