In re Farid **LABIB–KIYARASH,**
Debtor.

Farid **Labib–Kiyarash, Appellant,**

v.

Kathleen A. **McDonald, Chapter
13 Trustee, Appellee.**

BAP No. NW–01–1069–RyMaP.
Bankruptcy No. 00–10434 RCJ.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Sept. 20, 2001.

Decided Dec. 4, 2001.

**190**

Christopher P. Burke, Las Vegas, NV, for appellant.

Charles L. Kennon, III, Las Vegas, NV, for appellee.

Before: RYAN, MARLAR, and PERRIS, Bankruptcy Judges.

*OPINION*

RYAN, Bankruptcy Judge.

After Farid Labib–Kiyarash ("Debtor") filed a chapter 13[1] petition, Kathleen A. McDonald, the chapter 13 trustee ("Trustee"), objected (the "Objection") to Debtor's chapter 13 plan (the "Plan"). In the Objection, Trustee asserted that the Plan, which proposed under § 1322(b)(5) to maintain student loan payments outside the Plan according to the contract terms, unfairly discriminated in violation of § 1322(b)(1) against the other general unsecured creditors (the "Other Creditors"). After a hearing, the bankruptcy court sustained the Objection and entered an order dismissing Debtor's case (the "Order"). Debtor then timely appealed.

We VACATE and REMAND.

## I. FACTS

While studying to become a pharmacist, Debtor received four student loans (the "Loans"), which enabled him to complete his studies.[2] On January 19, 2000, Debtor filed his chapter 13 petition. In his schedules, Debtor listed $12,900 in secured claims, $7,000 in unsecured priority claims, and $139,825.98 in general unsecured claims. The Loans were included among Debtor's general unsecured claims.

The Plan provided for payment to Diversified Collection Services, Inc. ("Diversified"), a holder of one of the Loans (the "Diversified Loan"). As of February 2000, the balance on the Diversified Loan was $42,619.62. In accordance with the terms of the Diversified Loan, the Plan proposed

---

**1.** Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**2.** It is unclear from the appellate record (the "Record") when Debtor received the Loans or who held the original notes evidencing the Loans.

monthly payments of $500 outside the Plan with the final payment due in 2012.

The Plan also provided for payment to Aman Collection Service, Inc., another holder of one of the Loans (the "Aman Loan"). As of March 2000, the balance on the Aman Loan was $1,946.32. Again, in accordance with the terms of the Aman Loan, the Plan proposed monthly payments of $100 outside of the Plan with the final payment due in 2006.

Finally, the Plan provided for payment to Health and Human Services on the remaining two Loans (collectively, the "HHS Loans"). As of January 2000, the balances on the HHS Loans were $16,756.30 and $9,383.85. In accordance with the terms of the HHS Loans, the Plan proposed monthly payments of $300 and $200 outside of the Plan with the final payments due in 2008.

The Plan required Debtor to make payments of $400 for 36 months. Therefore, Debtor was to pay $14,400 over the life of the Plan with $3,000 going to the Other Creditors for an estimated 3% dividend.[3]

On March 14, 2000, Trustee filed the Objection asserting that the Plan unfairly discriminated against the Other Creditors because it proposed to treat them differently. Specifically, Trustee argued that because Debtor sought to maintain his contractual payments on the Loans outside the Plan while only paying the Other Creditors 3% through the Plan, Debtor unfairly discriminated against the Other Creditors.

At the hearing on the Objection, the bankruptcy court denied confirmation of the Plan because it unfairly discriminated against the Other Creditors. After the Order was entered, Debtor timely appealed.[4]

## II. ISSUES

Whether the bankruptcy court erred in sustaining the Objection when it failed to apply the *Wolff* test in holding that contractual payments on the Loans outside the Plan unfairly discriminated against the Other Creditors.

## III. STANDARD OF REVIEW

■ We review a bankruptcy court's interpretation of § 1322(b) de novo. *See McDonald v. Sperna (In re Sperna)*, 173 B.R. 654, 657 (9th Cir. BAP 1994).

## IV. DISCUSSION

*The Bankruptcy Court Erred in Sustaining the Objection When it Failed to Apply the Wolff Test in Holding That Contractual Payments on the Loans Outside the Plan Unfairly Discriminated Against the Other Creditors.*

The bankruptcy court denied confirmation of the Plan because it unfairly discriminated against the Other Creditors. On appeal, Debtor contends that the bankruptcy court erred because § 1322(b)(5) allowed him to make payments outside the Plan to his student loan creditors in accordance with the Loans' contractual terms. Apparently, the last payment on each of the Loans is due after the last payment called for under the Plan. Therefore, because his treatment of the Loans is consistent with § 1322(b)(5),[5] Debtor contends

---

**3.** The Plan estimates a 3% dividend to the Other Creditors. This dividend could increase or decrease depending upon the actual amount of unsecured claims filed.

**4.** The Order stayed dismissal pending the resolution of this appeal.

**5.** There is no evidence in the Record that any of the Loans were in arrears. At oral argument, Trustee contended for the first time that Debtor was ineligible to use § 1322(b)(5) because the Loans were not in arrears. However, we will not consider this argument be-

that the Plan does not unfairly discriminate under § 1322(b)(1).

Section 1322 governs the contents of a chapter 13 plan, and it provides in pertinent part that

> (b) [s]ubject to subsections (a) and (c) of this section, the plan may—
>
> (1) designate a class or classes of unsecured claims, as provided in section 1122 [6] of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;
>
> . . . .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim which the last payment is due after the date on which the final payment under the plan is due;
>
> . . . .

11 U.S.C. §§ 1322(b)(1) & (5).

■ By its own terms, § 1322(b)(1) allows for discriminatory treatment among classes of creditors, as long as that treatment is not unfair. *See Sperna,* 173 B.R. at 658. "[I]t is clear that by permitting the separate classification of unsecured claims, Congress anticipated some discrimination, otherwise creating separate

classes would serve no purpose." *Id.* (citation omitted).

■ In *Amfac Distribution Corp. v. Wolff (In re Wolff),* 22 B.R. 510 (9th Cir. BAP 1982), we set forth a four-part test for determining whether discrimination among classes of claims ⁿ violates § 1322(b)(1). *Id.* at 512.

> The test is (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*Id.*

In *Sperna,* the debtors' proposed plan classified student loan debt separately and provided that the student loans would be paid in full through the plan while paying other unsecured creditors only part of their claims. *See Sperna,* 173 B.R. at 657. We applied the *Wolff* test and determined that the separate classification of student loan debt was impermissible. *Id.* at 658. We concluded that "the nondischargeable nature of a student loan debt is not, by itself, a reasonable basis for discrimination." *Id.* at 658 (citation omitted).

Because *Sperna* did not involve classification of long-term student loan debt (i.e. debt with contractual payments extending beyond the plan term), we left open the possibility that long-term student loan debt could be separately classified in accordance with § 1322(b)(5). *Id.* at 659.

---

cause Trustee did not brief it, and arguments not properly briefed are deemed waived. *See Branam v. Crowder (In re Branam),* 226 B.R. 45, 55 (9th Cir. BAP 1998).

**6.** Section 1122 provides that

(a) [e]xcept as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim

or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

We noted that the classification of student loan debt under § 1322(b)(5) might serve as a way to satisfy the second element of the *Wolff* test. *Id.*

Turning to § 1322(b)(5), it allows a debtor to maintain contract payments on long-term debt, whether secured or unsecured, while curing any arrearage that might exist through a chapter 13 plan. *See Batt v. Fontaine (In re Fontaine)*, 27 B.R. 614, 614–15 (9th Cir. BAP 1982). "Long-term debt" is defined as "any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5).

While § 1322(b)(5) has traditionally been applied to home mortgages, its applicability is not limited to such debts. By its own terms, § 1322(b)(5) applies to student loan debt that matures after the debtor completes a chapter 13 plan. *See Fontaine*, 27 B.R. at 614–15 (quoting legislative history); *accord* 8 COLLIER ON BANKRUPTCY ¶ 1322.09[2], at 1322–30 (Lawrence P. King et al. eds., 15th ed. rev.2000). In fact, "[i]n the face of a trend disfavoring the separate classification of student loans in Chapter 13 cases, the debtor's best position may be long-term treatment [of the student loan debt] under § 1322(b)(5). . . ." 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 153.1, at 153–9 (3d. ed. rev.2000) (footnote omitted).

In approaching the interplay between §§ 1322(b)(1) and (b)(5) as to student loan debt, bankruptcy courts have developed two main approaches to deal with unfair discrimination. *See In re Colley*, 260 B.R. 532, 535–38 (Bankr.M.D.Fla.2000) (noting a majority and a minority approach). A majority of courts have read these two provisions together and require a plan proposing to deal with long-term debt under (b)(5) to also pass the unfair discrimination test of (b)(1). *See In re Thibodeau*, 248 B.R. 699, 704 (Bankr.D.Mass.2000). Indeed, one treatise states that

> it does not follow that every separate classification of a long-term claim under § 1322(b)(5) is necessarily a fair discrimination. . . . If there are other unsecured claims, [then] any plan proposal to . . . [deal with long-term student loan] debt under § 1322(b)(5) will be a separate classification tested against the unfair-discrimination standard in § 1322(b)(1).

LUNDIN, *supra*, § 155.2, at 155–3.

Therefore, the majority view reasons that

> [i]f Congress had wanted courts not to consider whether putting unsecured creditors in a separate class and providing for full monthly payments on the unsecured creditors' claims during the course of the plan constituted unfair discrimination, Congress would have drafted section 1322(b)(5) to read "notwithstanding paragraphs (1) and (2) of this subsection, a plan may provide for the curing of any default . . . and maintenance of payments. . . ." Congress did not draft the statute in such a manner.

*Colley*, 260 B.R. at 536–37 (quoting *In re Chandler*, 210 B.R. 898, 903–04 (Bankr. D.N.H.1997) (footnote and brackets omitted)).

In *Thibodeau*, the debtor proposed to cure her student loan arrearages through her plan while maintaining her monthly loan payments outside the plan. *See Thibodeau*, 248 B.R. at 700. Under the plan, other unsecured creditors were to receive 27% of their claims. *Id.* The trustee argued that this constituted unfair discrimination, and the debtor countered that this type of classification was permitted by § 1322(b)(5). *Id.* at 701–02. Even though § 1322(b)(5) was applicable, the court held that the debtor had to show that the classi-

fication was fair under § 1322(b)(1). *Id.* at 704.

The *Thibodeau* court then applied the *Wolff* test [7] and held that the debtor's plan unfairly discriminated against unsecured creditors. The bankruptcy court found that the plan could not satisfy the good faith element because the debtor had not devoted all of her excess income toward the plan and "discrepancies exist[ed] between proofs of claim and their treatment under the [p]lan." *Id.* at 705. The bankruptcy court reasoned that "a [p]lan that proposes to discriminate against a class of creditors is not filed in good faith where the [d]ebtor does not apply the entire amount of her excess income towards paying her creditors." *Id.*

The *Thibodeau* court also found that the debtor had not satisfied either the second or fourth elements of the *Wolff* test. *Id.* As to the second element of the test, the debtor contended that she had separately classified her student loan debt because such classification was consistent with § 1322(b)(5). The debtor denied that she had separately classified her student loan debt just because it was nondischargeable. *Id.* at 705–06. In rejecting this contention, the bankruptcy court reasoned that

> [t]he [d]ebtor's sizeable income allows her flexibility, which is not available to many low income debtors, to propose a non-discriminatory plan. In order to effectuate a nondiscriminatory plan, the [d]ebtor could pay the student loan creditor pro rata with other unsecured creditors during the life of the plan and as a continuing obligation after completion of the [p]lan. The [d]ebtor also could extend the duration of the [p]lan [beyond 36 months] in order to provide the other

general unsecured creditors with a greater distribution.

> Alternatively, the [d]ebtor could propose a plan which provides that for the first 36 months all payments would be devoted to all unsecured claims, and that for the remaining 24 months payments would be devoted solely to the student loans.

*Id.* at 706–07 (citations and footnote omitted).

A minority of courts have held that as a matter of law compliance with § 1322(b)(5) satisfies the unfair discrimination test under § 1322(b)(1). *See In re Cox,* 186 B.R. 744, 746–47 (Bankr.N.D.Fla.1995). As stated in *Chandler,*

> placing unsecured creditors, like those holding student loans, into a separate class and permitting debtors to maintain their payments to them at the full contract rate, as expressly permitted by section 1322(b)(5), is not "unfair" discrimination. [The minority of courts reason that t]his must be the result intended by Congress; otherwise, how could a debtor's plan provide for the "maintenance of payments" on "unsecured" claims under section 1322(b)(5) if it were considered "unfair discrimination" under section 1322(b)(1). In order to give meaning to both subsections, the [minority of c]ourt[s] find[ ] that the discrimination proposed by the debtors . . . is not unfair.

*Chandler,* 210 B.R. at 904 (citations omitted). Therefore, the minority of courts determined that it was unnecessary to separately analyze whether a debtor's plan complied with § 1322(b)(1) when the plan otherwise satisfied § 1322(b)(5). *Id.*

---

7. In analyzing § 1322(b)(1), the *Thibodeau* court applied the test set forth in *Mickelson v. Leser (In re Leser),* 939 F.2d 669 (8th Cir. 1991). *Id.* at 672. In *Leser,* the Eighth Circuit adopted the *Wolff* test. *Id.*

In *Cox*, the debtors proposed maintaining their student loan debt outside the plan while their other general unsecured creditors were to receive an 18% distribution under the plan. *See Cox*, 186 B.R. at 745. The trustee objected by arguing that this constituted unfair discrimination, but the bankruptcy court disagreed. *Id.* at 745–46. The court pointed out that the debtors were not accelerating their student loan payments. Rather, the student loan creditors were receiving under the plan what they would have received absent debtors' petition, which was debtors' minimum monthly payments. The court recognized that the plan was discriminatory in that student loan creditors were being paid at the full contract rate while other unsecured creditors were receiving only a portion of their debt. However, the court determined that such treatment was not per se "unfair." *Id.* at 746.

Similarly, in *In re Benner*, 156 B.R. 631 (Bankr.D.Minn.1993), the debtors proposed a plan that maintained contract payments to student loan creditors outside the plan while paying other general unsecured creditors 19% through the plan. *Id.* at 632. The trustee objected, claiming that the proposed plan unfairly discriminated against the general unsecured creditors that were being paid through the plan. The court overruled the trustee's objection. *Id.* at 633. The court reasoned that section 1322(b)(5) would be rendered largely ineffective with respect to unsecured debt if student loans could not be treated thereunder solely because the

creditor would receive better treatment than other nonpriority unsecured creditors. I conclude therefore, that student loan debt which is properly treated outside the plan in accordance with section 1322(b)(5), does not result in unfair discrimination in violation of section 1322(b)(1).

*Id.* at 634.[8]

■ We are persuaded by our reading of § 1322(b)(5) that the majority view is the better approach. We agree with the majority of courts that if Congress had intended to preclude § 1322(b)(5) from being read in conjunction with § 1322(b)(1), then it would have done so expressly. *See Colley*, 260 B.R. at 536–37 (citation omitted). We read §§ 1322(b)(1) and (b)(5) together, and we give effect to both sections. *See U.S. v. Trident Seafoods Corp.*, 92 F.3d 855, 862–63 (9th Cir.1996) (statutory construction requires that statutes be read in harmony and not in conflict). Therefore, we adopt the majority view and hold that a debtor may use § 1322(b)(5) to maintain long-term student loan payments at the contract rate while curing any arrearage through the plan, provided that the debtor's plan satisfies the *Wolff* test for unfair discrimination under § 1322(b)(1).

■ In applying the *Wolff* test, a debtor has the burden of proving that separate classification does not unfairly discriminate against the other unsecured creditors. *See Wolff*, 22 B.R. at 512. We

---

**8.** Technically, the *Benner* court joined the minority position and held that compliance with § 1322(b)(5) would not result in a violation of § 1322(b)(1). However, the *Benner* court went on to explain how its conclusion was consistent with the *Leser* test and demonstrated how the debtor's plan was permissible. *Benner*, 156 B.R. at 634. First, the *Benner* court reasoned that the discriminatory treatment was authorized because the student loans were nondischargeable and the debtors had an interest in emerging from their plan with as little debt as possible. Second, the debtors could not obtain a fresh start absent treatment of their student loan debt outside of the plan. Third, the court found that the discrimination was proposed in good faith. Finally, the degree of the discrimination was directly related to the debtors' fresh start. *Id.* at 634–35.

emphasize that in accordance with *Sperna* the nondischargeable nature of the Loans is alone an insufficient basis for separately classifying the Loans. *Sperna*, 173 B.R. at 658. We also acknowledge that the bankruptcy court has wide discretion in making this determination. *See Bentley v. Boyajian (In re Bentley)*, 266 B.R. 229, 234 (1st Cir. BAP 2001). We vacate the Order, and on remand, the bankruptcy court should apply the *Wolff* test in determining whether the Plan unfairly discriminates against the Other Creditors.

## V. CONCLUSION

In sum, the bankruptcy court erred in holding that the Plan unfairly discriminated against general unsecured creditors when it sustained the Objection without first applying the *Wolff* test.

VACATED and REMANDED.