**In re Brett Randall CARLSON and Robin Carol Carlson, a.k.a. Robin C. Cutler, Debtors.**

No. 01–23061–13.

United States Bankruptcy Court, D. Montana.

April 26, 2002.

R. Clifton Caughron, Helena, MT, for Debtors.

Robert G. Drummond, Great Falls, MT, Chapter 13 Standing Trustee.

### *ORDER*

RALPH KIRSCHER, Bankruptcy Judge.

In this Chapter 13 bankruptcy, after due notice, hearing was held March 14, 2002, at Butte on confirmation of Debtors' Chapter 13 Plan, together with the Trustee's objection thereto. The Chapter 13 Trustee and counsel for Debtors appeared at the hearing and requested leave to submit the issue raised by the Trustee's objection to the Court on stipulated facts and simultaneous briefs. The Court granted the parties' request and in an Order entered March 14, 2002, the Court granted the Trustee and Debtors ten days to file stipulated facts and simultaneous briefs. Upon request of the Trustee, the Court entered an Order on March 25, 2002, granting the parties an additional ten days to file their stipulated facts and simultaneous briefs.

On March 27, 2002, Educational Credit Management Corporation ("ECMC") filed an objection to confirmation of Debtors' Chapter 13 Plan. Thereafter, the Trustee timely filed a brief in support of his objection to confirmation of Debtors' Chapter 13 Plan on April 3, 2002. The parties' stipulated facts were filed on April 8, 2002, and provide in relevant part:

3. The parties stipulate and agree that the proposed Addendum to the Chapter 13 plan provides that student loans will be paid together with general unsecured creditors over the 36 months of the plan. The Addendum provides the following language:

(e) Unsecured Claims. After the payments specified above, the Trustee shall pay dividends, to the extent possible, to allowed unsecured, nonpriority claims on a pro rata basis in accordance with the following schedule:

CLASS 1: Debtor's and Codebtor's student loans—Nondischargeable student loans shall be paid prorata with all other claims during the first 36 months of the Plan. Thereafter, only student loans will be paid until they are paid in full. Any balance remaining of Debtor's and Codebtor's student loans at the conclusion of the Plan shall not be discharged. No interest shall be paid on these student loans during the term of this plan, and none shall accrue. At the conclusion of the Plan, interest shall again accrue on the remaining balance at the contract rate.

4. Total payments to be made under the Debtors' proposed Chapter 13 plan equal $6,000.00. The projected Trustee's fee under the terms of this plan equals $600.00. The Debtors' attorney is to be paid $1,000.00. Thus, $4,400.00 remains to be paid to the claimants.

5. Under the terms of this proposed plan a total of $1,082.00 will be paid to the general unsecured claimants. The student loans creditors would received [sic] $3,318.00 over the term of the plan.

6. The plan provides that 5.4% of the class of unsecured claims will receive distributions. The plan provides that 15% of the class of student loans creditors consisting of claim numbers 2, 6, 7, and 8 will be paid.

In addition to the above stipulated facts, the record reflects that Debtors propose, in their Chapter 13 Plan dated October 5, 2001, to make monthly plan payments of $100.00 for a period of sixty months. Per Schedule F, Debtors list $53,719.46 in unsecured debt, of which $18,654.00 is attributable to student loans. Creditors with unsecured claims totaling $40,951.51 have filed proofs of claim in this case, of which $21,186.05 relates to student loan debt. Debtors have not objected to any of the claims filed in their bankruptcy. Per Debtors' Schedules A, B and C, Debtors have $2,625.00 in nonexempt property.

The Trustee opposes confirmation of Debtors' Chapter 13 Plan arguing that the Plan unreasonably discriminates among the unsecured class of creditors in violation of 11 U.S.C. § 1322(b)(1). ECMC also objects to confirmation of Debtors' Chapter 13 Plan asserting that postpetition interest on its obligation should continue to accrue and remain a personal liability of Debtors, irrespective of the language set forth in the Addendum to Debtors' Chapter 13 Plan filed February 20, 2002.

The first issue presented is whether Debtors' proposed treatment of their student loans results in unfair discrimination as it relates to Debtors' treatment of their other unsecured obligations. In the case of *Amfac Distribution Corp. v. Wolff (In re Wolff)*, 22 B.R. 510 (9th Cir. BAP 1982), the Ninth Circuit Bankruptcy Appellate Panel ("BAP"), recognizing that "there will be occasions where unsecured claims might be classified and treated differently, even though the legal character of the claims is identical and the treatment is discriminatory, but not unfairly so,"

adopted four factors to consider when determining whether discrimination is "unfair":

(1) whether the discrimination has a reasonable basis;

(2) whether the debtor can carry out a plan without the discrimination;

(3) whether the discrimination is proposed in good faith; and

(4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*Id.* at 512. Indeed, the BAP recently noted that "[b]y its own terms, § 1322(b)(1) allows for discriminatory treatment among classes of creditors, as long as that treatment is not unfair." *In re Labib–Kiyarash*, 271 B.R. 189, 192 (9th Cir. BAP 2001).

In 1992, this Court decided two decisions which dealt with discriminatory treatment of unsecured claims. *In re Dodds*, 140 B.R. 542 (Bankr.Mont.1992); *In re Benner*, 146 B.R. 265 (Bankr.Mont. 1992). In the case of *Dodds*, the debtors proposed a Chapter 13 plan wherein their student loans would be paid in full while other unsecured creditors would receive distributions under the debtors' Chapter 13 plan of approximately 79% of their claims. In *Dodds*, the Court determined that discrimination between nondischargeable obligations and other unsecured obligations should be decided on a case-by-case basis. Following the reasoning set forth in *In re Haag*, 3 B.R. 649 (Bankr.Or. 1980), the Court allowed the discrimination proposed by the debtors reasoning that the unsecured creditors would receive more under the debtors' Chapter 13 plan

than they would in a Chapter 7 bankruptcy case.

In the case of *Benner*, the debtor proposed to pay a nondischargeable, unsecured, maintenance obligation over five years while paying nothing to other unsecured creditors.[1] The Court in *Benner* once again reiterated that a determination of whether discrimination among unsecured creditors in a Chapter 13 plan is unfair should be decided on a case-by-case basis. However, the Court also adopted the four factor test utilized by the BAP in *Wolff*. The Court reasoned that any attempt to force the debtor in *Benner* to provide for the other unsecured claims would essentially "scuttle" the debtor's ability to reorganize and that forcing the debtor into a Chapter 7 bankruptcy would not result in more favorable treatment for the unsecured creditors.

Subsequent to this Court's above decisions in *Dodds* and *Benner*, the BAP was again confronted with the issue of whether the nondischargeable nature of student loan obligations, in and of itself, provided a reasonable basis for discrimination among unsecured creditors. *In re Sperna*, 173 B.R. 654 (9th Cir. BAP 1994). In *Sperna*, the Spernas and Lucases classified their student loans separately from other unsecured obligations. The Spernas proposed a Chapter 13 plan which provided for 100% payment on their student loan obligations while paying only 1.4% to their other unsecured creditors. The Lucases also proposed a Chapter 13 plan that provided for 100% payment on their student loan obli-

---

1. The current applicability of *Benner* is limited to its adoption of the *Wolff* test since maintenance obligations are now governed by 11 U.S.C. § 507(a)(7). Subsection (a)(7) was added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994 and applies to cases filed after October 22, 1994. Subsection 507(a)(7) grants priority status to matured alimony, maintenance and support obligations. Pursuant to 1322(a)(2), claims entitled to priority status under § 507 must be paid in full unless the holder of such claim agrees to a different treatment. Thus, discriminatory treatment for alimony, maintenance and support claims is not only permitted, but is statutorily required.

gations while paying only 12.21% to the remainder of the unsecured creditors. The bankruptcy court in the above two cases denied the trustee's objections to confirmation of the plans and the trustee appealed.

On appeal, the BAP determined that it was appropriate for the bankruptcy court to apply the four-part *Wolff* test in determining whether the debtors' treatment of their student loan obligations resulted in unfair discrimination. However, the BAP remanded both the Spernas' case and the Lucases' case on the basis that there were not enough facts in the record for the BAP to determine whether the bankruptcy court's application of the *Wolff* factors, and thus the bankruptcy court's denial of the trustee's objections, was appropriate under the circumstances. Although the BAP did not have enough facts before it to affirm the bankruptcy court's decision, the BAP went on to examine whether the nondischargeable nature of an obligation provided a reasonable basis, in and of itself, to satisfy the first prong of the *Wolff* test. The BAP, in dicta, proceeded to discuss each of the *Wolff* factors in seriatim.

First, the BAP determined that nondischargeability, in and of itself, did not provide a reasonable basis for discrimination and reversed the bankruptcy court's denial of the trustee's objections on that basis. The BAP reasoned that "in order for discrimination to have a reasonable basis it must advance the purposes behind Chapter 13." *Id.* at 658.

In discussing factor two of the *Wolff* test, the BAP wrote that bankruptcy courts could examine "what payments were due under the loan agreements, when the last payment was due under the loan agreements in relation to the plan, whether there were any arrearages, whether the loans have been accelerated and whether the plans would effect an acceleration."

*Id.* at 659. As to factor three, the BAP instructed that "an appropriate view of good faith under the *Wolff* test is whether the discrimination involved furthers the goals of the debtor, satisfies the purposes behind Chapter 13 and does not require any creditor or group to bear an unreasonable burden. For example, if the plans were being used to effectively accelerate payments on the loans at the expense of the unsecured creditors, such discrimination would be in bad faith." *Id.* at 660. Finally, the BAP clarified its distinction between factor 2 and factor 4 as follows: "The second factor asks whether any discrimination at all is necessary. If the answer is affirmative, the court must then determine if the amount, or degree, of discrimination proposed is directly related to the reason for the discrimination." *Id.*

The BAP recently revisited the unfair discrimination issue in *In re Labib–Kiyarash*, 271 B.R. 189 (9th Cir. BAP 2001). In *Labib–Kiyarash*, the debtor proposed a Chapter 13 plan which provided for payments on student loans, outside the debtor's Chapter 13 plan, in accordance with the terms of the student loan notes. The debtor also proposed monthly plan payments which would pay other unsecured creditors approximately 3% on their outstanding obligations. The bankruptcy court sustained the trustee's unfair discrimination objection and dismissed the debtor's case. The debtor in *Labib–Kiyarash* appealed arguing that because his treatment of the student loan obligations was consistent with 11 U.S.C. § 1322(b)(5), his proposed plan did not unfairly discriminate among creditors under § 1322(b)(1).

The BAP vacated and remanded the bankruptcy court's decision on the basis that the bankruptcy court failed to apply the *Wolff* test. In particular, the BAP examined the interplay between § 1322(b)(5) and § 1322(b)(1) and adopted

the "majority view" that § 1322(b)(5) must be read in conjunction with § 1322(b)(1). In reaching its decision, the BAP wrote:

> [I]f Congress had intended to preclude § 1322(b)(5) from being read in conjunction with § 1322(b)(1), then it would have done so expressly. *See [In re] Colley*, 260 B.R. [532] at 536–37 [(Bankr. M.D.Fla.2000)] (citation omitted). We read §§ 1322(b)(1) and (b)(5) together, and we give effect to both sections. *See U.S. v. Trident Seafoods Corp.*, 92 F.3d 855, 862–63 (9th Cir.1996) (statutory construction requires that statutes be read in harmony and not in conflict). Therefore, we adopt the majority view and hold that a debtor may use § 1322(b)(5) to maintain long-term student loan payments at the contract rate while curing any arrearage through the plan, provided that the debtor's plan satisfies the *Wolff* test for unfair discrimination under § 1322(b)(1).
>
> In applying the *Wolff* test, a debtor has the burden of proving that separate classification does not unfairly discriminate against the other unsecured creditors. *See Wolff*, 22 B.R. at 512. We emphasize that in accordance with *Sperna* the nondischargeable nature of the Loans is alone an insufficient basis for separately classifying the Loans. *Sperna*, 173 B.R. at 658. We also acknowledge that the bankruptcy court has wide discretion in making this determination. *See Bentley v. Boyajian (In re Bentley)*, 266 B.R. 229, 234 (1st Cir. BAP 2001).

*Id.* at 195–96.

■■■ Even though the BAP has referred to the *Wolff* test as "oft-used, but much-criticized", this Court's discussion of the above cases illustrates that this Court and the BAP have expressly adopted the *Wolff* test as the appropriate standard to use under the circumstances as they exist in this case. *In re Hill*, 268 B.R. 548, 552 (9th Cir. BAP 2001). Additionally, due to the factual nature of the analysis required under the *Wolff* test and the fact that such test does not provide a great degree of predictability or guidance, the Court is still of the belief that the determination of whether discrimination among creditors is unfair must be made on a case-by case basis. Thus, it is within the foregoing confines from which this Court must fashion a decision for the issue at hand.

■■■ First, the Court reiterates that the burden is upon Debtors to show that their proposed discrimination between the student loan creditors and the other general unsecured creditors is not unfair. *Labib–Kiyarash*, 271 B.R. at 195. Additionally, the Court need not determine whether § 1322(b)(5) is implicated as Debtors have not established that their student loan obligations are in default or that the last payments on such obligations are due after the date on which the final payment under Debtors' Chapter 13 Plan is due.

The Stipulation of Facts, together with the record, show that general unsecured creditors with claims totaling $40,951.51 have filed proofs of claim in this case. Of the $40,951.51, $21,186.05 is attributable to student loan obligations and $19,765.46 is attributable to other general unsecured obligations. Debtors propose to distribute a total of $4,400.00 to their unsecured creditors during the term of their Plan. Of this amount, $1,082.00 is slated to go to general unsecured creditors while $3,318.00 is slated to be paid on unsecured student loan obligations.

Debtors' Schedule A reflects that Debtors own real property with a current market value of $100,000. The real property is encumbered by a secured claim in the approximate sum of $96,421.00 and is subject to a claimed homestead exemption of $3,579.00. Per Schedule B, Debtors list

various items of personal property with a combined value of $9,180.25. Debtors have claimed exemptions in the various items of personal property totaling $6,555.25. Utilizing the above numbers, Debtors have $2,625.00 in non-exempt personal assets which could be distributed in a hypothetical Chapter 7 bankruptcy. Based upon the foregoing and considering the claims that have been filed in this case, student loan creditors would receive a distribution of $1,092.00 under Chapter 7 of the Bankruptcy Code while other general unsecured creditors would receive an approximate distribution of $1,008.00 after considering the Chapter 7 trustee's fee.

After considering the above pertinent facts and the applicable law as discussed herein, the Court finds that Debtors have not sustained their burden of proof by showing that their proposed discrimination is fair. First, under the *Wolff* test, Debtors must show that their proposed discrimination has a reasonable basis.

Section 1322(d) of the Bankruptcy Code only requires that debtors propose a plan that is three years in duration. For cause, shown, the Court may approve a plan that provides for payments in excess of three years but under no circumstances may the Court approve a plan that exceeds five years. 11 U.S.C. § 1322(d). In the instant case, Debtors have proposed a Chapter 13 Plan which is five years in length. The Plan is nondiscriminatory during the first three years as distribution to all unsecured creditors, including student loan creditors, is provided for an a pro rata basis. During the last two years of the Plan, Debtors propose to pay only their student loan creditors; other general unsecured creditors will receive nothing during the last two years of Debtors' proposed Chapter 13 Plan.[2]

Debtors offer absolutely no basis—rational or otherwise—for their desire to propose a five year plan that provides for payment to non-student loan, general unsecured creditors during only the first three years of the Plan. The Court can only speculate that Debtors desire to pay down, to the greatest extent possible, a nondischargeable obligation while at the same time proposing that no post-petition interest will accrue on Debtors' student loan obligations during the Plan's five-year term. The Court agrees with ECMC that post-petition interest continues to accrue on personal liabilities of a debtor which go unpaid and which are nondischargeable. *See Bruning v. United States*, 376 U.S. 358, 362–63, 84 S.Ct. 906, 908–09, 11 L.Ed.2d 772 (1964) ("The basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate are the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience. These reasons are inapplicable to an action brought against the debtor personally. In the instant case, collection of postpetition interest cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high interest creditors at the expense of other creditors."). Once Debtors' attempt to avoid five years of interest on their student loan obligations is removed, Debtors are left with a Plan that simply proposes to pay one category of unsecured creditors a greater percentage on their claims as opposed to another category of unsecured creditors for no articulated reason. Accordingly, Debtors have failed to satisfy the first prong of the *Wolff* test.

Moreover, unlike the debtors in *Benner, supra*, it appears that the Debtors in this

---

**2.** Other than the Chapter 13 Trustee and a student loan creditor, no general unsecured creditors have opposed confirmation of Debtors' Chapter 13 Plan.

case could carry out their plan without the discrimination. In addition, Debtors' failure to present any evidence in support of their proposed discrimination precludes this Court from determining whether the discrimination is proposed in good faith.

Finally, Debtors' failure to establish any basis for their discrimination prohibits the Court from determining whether the degree of discrimination is directly related to the basis or rational for the discrimination. For the reasons discussed above, the Court finds that the Trustee's Objection to confirmation of Debtors' Chapter 13 Plan must be sustained. The Court also finds that ECMC's objection to confirmation of Debtors' Chapter 13 Plan must be sustained as well.

IT IS THEREFORE ORDERED the Chapter 13 Trustee's and Educational Credit Management Corporation's Objections to confirmation of Debtors' Chapter 13 Plan are sustained; confirmation of Debtors' Chapter 13 Plan is denied; Debtors shall file an amended Chapter 13 Plan curing the Trustee's and Educational Credit Management Corporation's Objections to confirmation on or before May 3, 2002; and a hearing on confirmation of Debtors' Chapter 13 Plan—which is to be filed on or before May 3, 2002—shall be held Tuesday, May 7, 2002, at 09:00 a.m., or as soon thereafter as counsel can be heard, in the 2ND FLOOR COURTROOM, FEDERAL BUILDING, 400 N. MAIN, BUTTE, MONTANA.

IT IS FURTHER ORDERED that if Debtors fail to file an amended Chapter 13 Plan, or seek conversion or dismissal of this case, on or before May 3, 2002, this case will be dismissed without further notice or hearing.