**In re Chynell M. PRECISE, Debtor.**

**No. 12–19700bf.**

United States Bankruptcy Court,
E.D. Pennsylvania.

June 24, 2013.

**68**

Jack K. Miller, William C. Miller, Jack K Miller Esq., Philadelphia, PA, William C. Miller, Chapter 13 Trustee, Trustee.

James D. Moran, James D. Moran, Philadelphia, PA, for Debtor.

## STATEMENT OF REASONS IN SUPPORT OF ORDER

BRUCE FOX, Bankruptcy Judge.

AND NOW, upon consideration of the debtor's request to confirm her second modified chapter 13 plan,

And upon consideration of the amended objection thereto filed by the chapter 13 trustee, William C. Miller, Esq., dated April 26, 2013,

And after a hearing pursuant to 11 U.S.C. § 1324(a),

And upon consideration of the parties' post-hearing submissions,

And the debtor filed a voluntary petition in bankruptcy under chapter 13 on October 15, 2012,

And the debtor's proposed plan, dated March 15, 2013, calls for her to tender to the trustee a total of $19,766.28,[1] of which $1,255.48 was paid to the trustee prior to the filing of the amended plan, *see* 11 U.S.C. § 1326(a)(1), with the balance to be paid from the debtor's future earnings in the amount of $330.55 monthly. *See* docket entry # 28,

And the proposed plan provides that the chapter 13 trustee will distribute from the amounts received $15,192.75 to secured creditor Bank of America on account of a prepetition mortgage delinquency. *See* 11 U.S.C. § 1322(b)(5); *see generally Rake v. Wade,* 508 U.S. 464, 469, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) ("Section 1322(b)(5) expressly authorizes debtors to cure any defaults on a long-term debt, such as a

---

1. The debtor's plan in paragraph 2(c) states that the total of payments will be $19,765.79. However, the plan states that the debtor will tender $330.55 to the trustee for 56 months which equals $18,510.80. An additional $1,255.48 already tendered totals $19,766.28.

mortgage, and to maintain payments on the debt during the life of the plan."),

And the proposed plan also provides that $196.46 will be distributed to the City of Philadelphia to satisfy a municipal water lien, and $2,400.00 will be paid to the debtor's attorney as an administrative expense claim. *See generally* 11 U.S.C. §§ 330(a)(4)(B), 507(a),

And the proposed plan calls for the trustee to receive a commission pursuant to 28 U.S.C. § 586(e)(1)(B), which the debtor estimates to be 10%. Debtor's Posthearing Memorandum, at 1. The trustee states that his current commission is set at 8%. Trustee's Posthearing Memorandum, at 1,

And the balance of the funds received under the plan is to be distributed by the trustee, *pro rata*, to allowed unsecured claims,

And ECMC filed a proof of claim, docketed at # 5 on the claims register, alleging an unsecured claim of $5,932 owed by the debtor for outstanding student loans,

And, in addition to the proofs of claims filed by Bank of America, ECMC and the City of Philadelphia, eight unsecured claims were filed totaling $4,694.83. *See* Claims Register,

And, along with her second modified chapter 13 plan, the debtor filed an amended Schedule J listing her current monthly expenses. Those expenses total $4,588.55,

and include $85.00 per month to repay the debtor's outstanding student loans,

And the debtor asserts on her amended Bankruptcy Schedule J that, after her monthly student loan payment, she has only $330.95 in net monthly income available with which to fund the chapter 13 plan,

And the debtor's plan does not expressly mention a distribution to the student loan creditor; however, the debtor concedes that she intends to make direct payments on this obligation. The debtor believes that these direct monthly payments of $85.00 will allow her to repay approximately 86% of her student loan obligation by the end of her chapter 13 plan. *See* Debtor's Posthearing Memorandum, at 2,

And, in addition to these direct payments, the trustee interprets the debtor's proposed plan as including the unsecured claim of ECMC in the proposed *pro rata* distribution to unsecured creditors. If so, then the unsecured claim of ECMC would be paid 89.7% over the life of the debtor's plan and other unsecured creditors would receive a distribution of 3.7%. If the debtor's plan were construed to exclude any trustee distributions to ECMC, then that creditor would receive 86% of its claim from direct payments from the debtor and other unsecured creditors would receive an 8.4% dividend,[2]

---

**2.** I reach this conclusion as follows:

| | | |
|---|---|---|
| Total plan payments | =$19,766.28 | |
| trustee commission (8%) | =$1,581.30 | |
| secured+priority claims | =$17,789.21 | |
| pro rata payments to unsecureds | =$395.77 | |
| Unsecured Claims w/ ECMC | =$10,626.83 | $395.77/$10,626.83=3.7% |
| Unsecured Claims w/o ECMC | =$4,694.83 | $395.77/$4,694.83=8.4% |
| Direct Payments to ECMC ($85/mo x60 mos) | =$5,100.00 | |
| ECMC Claim | =$5,932.00 | |
| Percentage of Claim Paid to ECMC by debtor | = 86.0% | |
| Percentage of Claim if Paid by Trustee | = 3.7% | |

And the debtor does not assert that she is delinquent in student loan payments; nor does ECMC allege a prepetition default on its proof of claim. *See* proof of claim # 5 (box 4); *see also In re Kubeczko,* 2012 WL 2685115, at *3 (Bankr.D.Colo. July 6, 2012) ("Presumably, there is no arrearage on the Debtor's education loan debt because his Plan reflects no cure payments."),

And the debtor filed Official Bankruptcy Form 22c, as required by 11 U.S.C. § 521, *see In re Mancl,* 381 B.R. 537, 539 (W.D.Wis.2008), averring that her monthly income is below the median income for her family of four. *See* docket entry # 5; *see also* Debtor's Posthearing Memorandum, at 2,

And therefore her disposable income for chapter 13 plan confirmation purposes under section 1325(b) is, in general, determined by her current monthly income and expenses; *i.e.,* Bankruptcy Schedules I and J. *See* 11 U.S.C. § 1325(b)(2), (3); *In re Hornung,* 425 B.R. 242, 251 (Bankr. M.D.N.C.2010) ("Post–BAPCPA, projected disposable income for below median income debtors continues to be determined by examining schedules I and J."); *see also In re Renteria,* 2012 WL 1439104, at *3 (Bankr.D.Colo. Apr. 26, 2012); *In re Bostwick,* 406 B.R. 867, 874 (Bankr. D.Minn.2009),

And the chapter 13 trustee objects to confirmation of the debtor's second modified chapter 13 plan, contending that the "plan unfairly discriminates regarding payments to unsecured creditors" and that the "debtor is proposing to pay a student loan (100%) outside the plan and the plan proposes to pay other unsecured creditors a 0% distribution." Trustee's Amended Objection, ¶¶ 1–2,

And, in other words, the trustee challenges the debtor's inclusion of her monthly student loan payments as part of her Schedule J expenses. He argues that approval of the debtor's proposed chapter 13 plan would result in a dividend of 4% or less to all unsecured creditors except ECMC, while ECMC would receive direct payments as well as a trustee distribution totaling almost 90% of its claim. If the debtor were to pay an additional $85 monthly to the trustee for distribution to all unsecured creditors, rather than solely to ECMC on her outstanding student loans, then all unsecured creditors, including ECMC would receive a dividend of 45%,[3]

And student loan obligations generally will not be discharged in a chapter 13 case unless the rigorous requirements of 11 U.S.C. § 523(a)(8) ("undue hardship") can be met. *See* 11 U.S.C. § 1328(a)(2); *In re*

---

**3.** I compute this percentage as follows:

Total plan payments to the trustee w/o direct ECMC payment=$24,526.28
$330.55 + $85=415.55/mo x 56/mos  =$23,270.80
funds already paid to the trustee  = $1,255.48

Amount to be paid pro rata to unsecured creditors  =$4,774.97
Total payments minus
trustee (8%) commission  =$1962.10
secured + priority payments  =$17,789.21

Total Unsecured Claims including ECMC  =$10,626.83
Percentage Paid to Unsecured Creditors $4,774.97/$10,626.83  =45.0%

*Bender,* 368 F.3d 846, 847 (8th Cir.2004); *see generally In re Brightful,* 267 F.3d 324 (3d Cir.2001). The debtor believes that she would be unable to meet that standard. *See* Debtor's Posthearing Memorandum, at 2,

And, furthermore, the Third Circuit Court of Appeals has held that a student loan creditor may accrue postpetition interest during the pendency of a chapter 13 case. *See Leeper v. Pennsylvania Higher Educ. Assistance Agency,* 49 F.3d 98 (3d Cir.1995),

And therefore it is in this debtor's financial interest to propose a plan that will allow her to tender her regular monthly student loan payments postpetition, thereby reducing substantially the amount she will owe upon completion of her plan. To the extent her other unsecured claims receive nominal payments, the debtor expects that such claims will be discharged upon the completion of her plan and she will have no further obligation to pay them. *See generally* 11 U.S.C. §§ 524(a), 1328(a),

And three provisions of the Bankruptcy Code concerning confirmation of chapter 13 plans are relevant to this contested matter,

And, first, pursuant to section 1322(b)(5), a debtor may "notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]" 11 U.S.C. § 1322(b)(5),

And the debtor argues that section 1322(b)(5) is applicable because it will take almost 70 months of tendering regular monthly student loan payments of $85 to repay her loan in full, which is longer than her proposed plan. *See* Debtor's Posthearing Memorandum, at 2. Thus, she contends that the aforementioned statutory provision permits her to continue to maintain her student loan payments postpetition as part of her chapter 13 plan,

And, second, the trustee focuses upon section 1322(b)(1), which provides that "a plan may—(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated...." Trustee's Posthearing Memorandum, at 3 (unpaginated),

And paying an unsecured claimant directly (typically referred to by counsel as a payment "outside of the plan") is considered as payment "under the plan." *In re Abaunza,* 452 B.R. 866, 871 (Bankr. S.D.Fla.2011); *In re Trusty,* 2007 WL 3274420, at *1 n. 5 (Bankr.E.D.Pa. Nov. 5, 2007). Thus, the trustee maintains that the debtor's proposed direct monthly payment of her student loan debt constitutes separate classification of unsecured creditors, rendering section 1322(b)(1) applicable. *See In re Orawsky,* 387 B.R. 128 (Bankr.E.D.Pa.2008) (applying section 1322(b)(1) when the chapter 13 debtor proposed a plan to pay her student loan creditor directly),

And the trustee further argues that the debtor's proposed plan unfairly discriminates against all unsecured creditors in favor of ECMC, as the student loan creditor will receive a much greater distribution than all other general unsecured creditors,

And the majority of courts, *see* Hauser, *Separate Classification of Student Loan Debt in Chapter 13,* 32 Am. Bankr.Inst. J. 38, at 39 (April 2013), hold that paragraph (1) of section 1322(b) places a limit on paragraph (5), therefore allowing cure and maintenance of an unsecured long-term debt, such as a student loan, only if such a plan provision does not unfairly discrimi-

nate against other unsecured claims. *See, e.g., In re Labib–Kiyarash,* 271 B.R. 189 (9th Cir. BAP 2001); *In re Kubeczko,* 2012 WL 2685115, at *2–3; Hauser, at *39; but *see In re Zeigafuse,* 2012 WL 1155680, at *3 (Bankr.D.Wyo. Apr. 5, 2012) (minority view that paragraph (5) trumps paragraph (1)); *In re Harding,* 423 B.R. 568, 572, 574 (Bankr.S.D.Fla.2010) (same),

And these courts reason that if Congress had intended the two paragraphs to be independent of each other it would have drafted section 1322(b)(5) as stating "notwithstanding paragraphs (1) and (2)" rather than only "notwithstanding paragraph (2) of this subsection." *In re Labib–Kiyarash,* 271 B.R. at 193 (citing *In re Colley,* 260 B.R. 532, 536 (Bankr.M.D.Fla. 2000)); *see In the Matter of Boscaccy,* 442 B.R. 501 (Bankr.N.D.Miss.2010) (same); Hauser, *Separate Classification of Student Loan Debt in Chapter 13,* 32 Am. Bankr. Inst. J. at 39:

> On balance, the majority view adopts the best construction of the existing statute by reading subsection (b)(5) in light of (b)(1) and attempting to harmonize the conflict by imposing an unfair-discrimination analysis on chapter 13 plans that use § 1322(b)(5) to provide for full payment of student loan debts. The close placement of these provisions, coupled with the specific exclusion of subsection (b)(2) from § 1322(b)(5) are indicators that Congress intended some interplay between (b)(5) and (b)(1) and could have avoided its intersection had Congress wished to do so.

(footnote omitted). *But see In re Truss,* 404 B.R. 329, 334 (Bankr.E.D.Wis.2009) (stating that if a debtor proposes to cure and maintain an unsecured claim, then it is not for the court to consider the fairness to other creditors: "Such a provision is authorized by statute."); *In re Cox,* 186 B.R. 744 (Bankr.N.D.Fla.1995),

■ And most courts have also rejected the contention that application of section 1322(b)(1) to nondischargeable student loans would impair the congressionally desired fresh start for chapter 13 debtors, as they would complete their plan in default on their student loans. Courts have reasoned that this result is not a basis for finding that section 1322(b)(1) and (5) conflict. *In re Kubeczko,* 2012 WL 2685115, at *4; *see also In re Bentley,* 266 B.R. 229, 233 (1st Cir. BAP 2001) (rejecting that discrimination is acceptable to the "extent that it furthers an articulated, legitimate interest of the debtor," as well as that emerging from bankruptcy debt-free is a legitimate interest). In other words, the nondischargeability of the debt by itself is not a sufficient reason to treat a student loan differently from other unsecured debts. If Congress intended to ensure that student loans were paid in full in a chapter 13 case it could have made such debts a priority obligation, as it did with domestic support obligations, because 11 U.S.C. § 1322(a)(2) requires all claims holding priority to be paid in full under a confirmed plan (unless the creditor agrees to a lesser treatment). *See, e.g., In re Labib–Kiyarash,* 271 B.R. 189, 192, 196 (9th Cir. BAP 2001) (nondischargeability of a student loan is not by itself a reasonable basis for discrimination); *In re Bentley,* 266 B.R. at 235, 236 (reasoning that nothing in the Bankruptcy Code mandates that nondischargeable debt be paid in full, and that nondischargeability is not the same thing as priority); *In re Sutton,* 2012 WL 433480, at *3 (Bankr.E.D.N.C. Feb. 9, 2012) (noting that student loans are not priority claims),

■ And while I find the majority position on the issue persuasive, and that section 1322(b)(1) does apply to plans that provide for the cure and maintenance of long–term unsecured debts, such as stu-

dent loans, I note that courts have struggled to formulate a standard by which to apply the phrase "unfair discrimination" in the context of section 1322(b)(1):

Section 1322(b) of the Bankruptcy Code, while forbidding as we have said classifications that discriminate unfairly against creditors, does not explain what "unfairly" means in this context. The courts have striven to formulate a more precise standard for determining the legitimacy of classifications proposed by Chapter 13 debtors, but without success.

* * *

We haven't been able to think of a good test ourselves. We conclude, at least provisionally, that this is one of those areas of the law in which it is not possible to do better than to instruct the first-line decision maker, the bankruptcy judge, to seek a result that is reasonable in light of the purposes of the relevant law, which in this case is Chapter 13 of the Bankruptcy Code; and to uphold his determination unless it is unreasonable (an abuse of discretion). This approach has support in *In re Bentley*, 266 B.R. 229, 239–40 (1st Cir. BAP 2001), and 8 *Collier on Bankruptcy* ¶ 1322.05[2] (15th ed. 2002), as well as in the statutory language of "unfair" discrimination against creditors.

*In re Crawford*, 324 F.3d 539, 541–42 (7th Cir.2003); *see also In re Orawsky*, 387 B.R. at 140–43 (critiquing the various factors considered by courts to create a standard but finding the "baseline test" articulated in *In re Bentley*, 266 B.R. 229 (1st Cir. BAP 2001) useful),

And the debtor in this contested matter emphasizes the approach used in *Orawsky*, which confirmed a proposed chapter 13 plan providing a 12.6% dividend to non-student loan unsecured creditors from plan payments of $100.00 per month for 60 months, *see* 387 B.R. at 149 n. 36, while directly paying regular student loan payments of $217.00 per month on outstanding debts of $33,599.13 for 60 months, *id.*, at 134–35, or 39% of the student loan debts. The court found that this plan did not unfairly discriminate within the meaning of section 1322(b)(1),

And I find the *Orawsky* decision inapposite because the debtor in that case had above-median income, and her projected disposable income, calculated under Form 22c and sections 1325(b)(2) and (3), was $0. *Id.*, 387 B.R. at 154. The *Orawsky* court then determined that "neither § 1325(b)(2) and (3) nor § 1325(a)(3) compel [the debtor] to commit $317.00 per month for payment of unsecured creditors in her chapter 13 plan." *Id.*, at 155,

And because the debtor in *Orawsky* had no projected disposable income, the *Orawsky* court concluded that she had no statutory obligation to pay *any* dividend to unsecured creditors. It reasoned:

The Debtor has chosen to voluntarily contribute $317.00 a month, for a total of $19,020.00, to her Plan. This funding is derived entirely from income that she is not legally obligated to commit to the Plan. She seeks to utilize this income, not to improve a moderate standard of living or indulge in luxuries, but to make some effort to repay her creditors. In doing so, she is not proposing to accelerate her student loan indebtedness and pay that accelerated amount at the expense of her other unsecured creditors. Rather, she seeks to continue to pay Sallie Mae [her student loan creditor] only its monthly contractual due in the ordinary course, a result that is consistent with Congressional policy favoring the repayment of student loans even after the grant of bankruptcy relief to a student loan borrower. Further, the Debtor is proposing to use a significant portion of her voluntary monthly contri-

bution, not earmarked for student loan debt repayment, to repay her general unsecured creditors. As a result, the unsecured creditors other than Sallie Mae benefit materially from the Debtor's Plan. They are obtaining a 12.6% dividend where they might otherwise obtain a 5.7% dividend or, in the worse case scenario, nothing. In terms of the *Bentley* analysis, the Debtor's Plan provides a tangible benefit to the disfavored class that bears a reasonable relationship to the deviation from the relevant chapter 13 baselines

*In re Orawsky,* 387 B.R. at 155–56 (footnotes omitted),

And as was recently explained in *In re Stull,* 489 B.R. 217 (Bankr.D.Kan.2013):

Nothing in the enactment of BAPCPA [the 2005 amendments to the Bankruptcy Code] renders the *Bentley* test obsolete. BAPCPA significantly altered the discretion that judges once wielded when determining whether a debtor was devoting his or her disposable income to a plan by defining what above-median debtors pay their unsecured creditors as their projected disposable income (PDI). Congress decreed that, for above-median debtors, PDI is determined by a mechanical test found in § 707(b)(2) and (3) and applied to chapter 13 by § 1325(b)(2) and (3). But the 2005 amendments did not displace the equal distribution concept, nor did they prioritize student loans. And by imposing mechanically-determined projected disposable income requirements on above-median debtors, § 1325(b) actually makes it easier to determine whether these debtors are committing disposable or discretionary income to their nondischargeable obligations by liquidating the amount of disposable income the debtors must pay to the unsecured creditors.

As it must, Stull's plan proposes committing all of his PDI to his unsecured creditors. The stipulated total amount proposed to be paid to the unsecured creditors is $8,440, yielding the non-student loan creditors a dividend of 49 percent. But Stull generates more income than the disposable income calculation yields. So, using funds other than his PDI, Stull proposes to pay the $3,722 student loan claim in full with interest, yielding a 100 percent dividend to that creditor. Because he is not using PDI, the non-student loan creditors will receive not a dime less than they would at the baseline while the student loan will be paid in full.

*Id.,* at 221.

■ And here, as discussed above, the debtor's projected disposable income is based upon Bankruptcy Schedules I and J. Thus, unlike the debtor in *Orawsky,* Ms. Precise has no net monthly income that she is not obligated to use to fund her chapter 13 plan. In this contested matter, there is no "voluntary" payment to the student loan creditor using funds not included as projected disposable income. *See In re Stull,* 489 B.R. at 222–23 ("Because a below median debtor necessarily pays his unsecured creditors his disposable income based upon income and actual expenses rather than upon a projection derived from the means test, he may have no 'discretionary' income. Whatever he pays the student loan will necessarily diminish what he can pay the other unsecured creditors."),

And, as a result, the court in *In re Kubeczko* held that a chapter 13 plan filed by a debtor with below median income, such as this debtor, violated section 1322(b)(1) in proposing a plan calling for direct regular monthly payments to his student loan creditor with only nominal payments to all other unsecured creditors:

[T]he Court need not engage in a searching analysis to conclude that creditors who receive a less than 1% dividend on their claims have been unfairly discriminated against when compared to a [student loan] creditor who receives a 47% dividend. Consequently, the Court finds that the Debtor's Plan may not be confirmed because it violates the provisions of 11 U.S.C. § 1322(b)(1) with respect to its treatment of the Debtor's education loan debt compared to the Plan's treatment of the Debtor's remaining general unsecured debts.

*Id.*, 2012 WL 2685115, at *5,

And in this contested matter, the debtor's proposed plan would, if approved, provide for, at least, an 86 percent dividend to ECMC, while all other general unsecured creditors would receive no more than 8.4 percent (or possibly less than 4 percent depending upon the interpretation of the proposed plan),

▮ And the third statutory provision relevant to this dispute is 11 U.S.C. § 1322(b)(10),[4] which provides:

Subject to subsections (a) and (c) of this section, the plan may . . . provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent

that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims[.]

And as the debtor's obligation to ECMC is nondischargeable under section 1328(a), she is not authorized to pay interest to this creditor unless other creditors are paid in full. *See In re Stull*, 489 B.R. at 223 ("This language is plain: in the absence of 'full payment of all allowed claims,' an unsecured non-dischargeable claim may not receive interest."),

And thus, in addition to unfairly discriminating under section 1322(b)(1), the debtor's proposed plan violates section 1322(b)(10) and cannot be approved. *See In re Stull*, 489 B.R. at 224 ("Stull makes no argument in support of paying interest here. The statute's 'full payment' language seems incapable of another interpretation and is in accord with basic bankruptcy distribution principles. It is inequitable to allow a nondischargeable claim interest while refusing to pay the other creditors in full when, unlike the other unsecured creditors, the student loan claim holder will have the means of collection after the plan is complete. Because the Stull plan runs afoul of this provision, it cannot be confirmed."); *In re Kubeczko*, 2012 WL 2685115, at *6; *In re Edmonds*, 444 B.R. 898, 902 (Bankr. E.D.Wis.2010),[5]

4. Although neither the debtor nor the trustee referred to this provision, "the [Bankruptcy] Code makes plain that bankruptcy courts have the authority—indeed, the obligation— . . . to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue." *United Student Aid Funds, Inc. v. Espinosa* 559 U.S. 260, 277 & n. 14, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010).

5. As noted by the *Kubeczko* court, the addition of section 1322(b)(10) as part of the 2005 Bankruptcy Code amendments makes it difficult for chapter 13 debtors to provide dis-

criminatory treatment to student loan creditors:

With only the narrowest of exceptions Congress' enactment of § 1322(b)(10) as part of BAPCPA has deprived debtors of the ability to cure and maintain payments under § 1322(b)(5) on unsecured debt. But the Court has no reason to believe that is not the result Congress intended. Section 1322(b)(10) makes it extremely difficult to provide a treatment for a nondischargeable unsecured claim that is any different from other unsecured claims. The Court cannot find it unreasonable or absurd for Congress

Accordingly, an order will be entered denying confirmation of the debtor's proposed second modified chapter 13 plan. She will be given leave to file an amended plan by a date certain.[6]

to adopt a provision that, in the vast majority of cases, requires parity of treatment between nondischargeable unsecured debts and dischargeable unsecured debts. The policy that finds expression in § 1322(b)(10)—at least with respect to education loan debt—seems also to have been expressed *in the BAPCPA revisions to* § 1328(a)(2), which significantly added to the types of debts that may be found to be nondischargeable in chapter 13 . . . . Also, as part of BAPCPA, Congress amended § 523(a)(8) to expand the scope of education related loan obligations that are nondischargeable under that subsection. 11 U.S.C. § 523(a)(8)(B).

2012 WL 2685115, at *6. *See also* Brown and Ahern, *2005 Bankruptcy Reform Legislation with Analysis*, (Thomson/West 2005), at p. 43, discussing the addition of section 1322(b)(10) in BAPCPA:

An example of [of the effect of section 1322(b)(10)] would be that a debtor could propose to pay interest on a nondischargeable student loan and that would be permissible if the debtor had remaining disposable income for that purpose and so long as the debtor's plan otherwise proposed to pay other claims in full. Since the requirement is to pay other allowed claims in full, it is doubtful that many chapter 13 debtors will have excess disposable income for payment of such interest.

Indeed, even without the 2005 addition of student loan debts as generally nondischargeable under section 1328(a) by virtue of section 523(a)(8), section 1328(a)(1) has long excepted from discharge any long-term debts provided for under section 1322(b)(5). Thus, whether or not a chapter 13 debtor could demonstrate "undue hardship" under section 523(a)(8), all students loans with the last payment due after the end of the chapter 13 plan would be rendered nondischargeable if the debtor's chapter 13 plan provided for cure and maintenance payments under section 1322(b)(5).

As section 523(a)(8) applies to ECMC's claim, I need not now decide whether the addition of section 1322(b)(10) would preclude cure and maintenance payments under section 1322(b)(5) of a long-term unsecured claim that did not fall within the scope of section 523(a) unless all allowed unsecured claims will be paid in full. *Compare In re Freeman*, 2006 WL 6589023, at *2 (Bankr. N.D.Ga. Dec. 22, 2006) (section 1322(b)(10) is in conflict with section 1322(b)(5) and so does not apply to plans providing for cure and maintenance payments to be made to any long-term debts) with *In re Stull*, 489 B.R. at 223–24 (section 1322(b)(10) does not render section 1322(b)(5) a nullity and must be enforced as written, as the former provision does not apply to long-term secured claims such as mortgages [the "most common use by far" for section 1322(b)(5), *see* 8 *Collier on Bankruptcy*, ¶ 1322.09[2] (16th ed. 2012)] and only applies when unsecured claims are not being paid in full); Lee, *An Attempt at Post–Mortem Revival*, 31 Am. Bankr.Inst. J. 38 (July 2012).

6. In her post-hearing reply memorandum, the debtor complains that the trustee should have raised his objection to her direct student loan payments months before, as her earlier plan proposals contained the same provision. Although the trustee would respond that the debtor's proposed plans should have contained an express provision regarding direct payments under section 1322(b)(5), I have taken the debtor's complaint into account by granting the debtor leave to file an amended plan that does not contain this provision.